[Civil No. 4512. Filed October 18, 1943.]

[142 Pac. (2d) 414.]

EMPLOYERS CASUALTY COMPANY, Appellant,
v. JAMES R. MOORE and ELIAS M. ROMLEY,
copartners in the practice of law under the firm
name and style of Moore & Romley, Appellees.

Messrs. Struckmeyer & Struckmeyer, for Appellant.

Messrs. Moore, Romley & Roca, for Appellees.

ROSS, J.—George A. and Edith Damron, on June 4, 1941, employed Moore & Romley, a local firm of lawyers, to bring an action against Thomas E. Hudson, a resident of California, on account of personal injuries sustained by them by reason of the negligent operation of an automobile by said Hudson. The contract of employment was in writing and under it the Damrons agreed to pay said attorneys for their services "an amount equal to thirty three and one-third per cent (33⅓%) of all sums recovered, whether by suit or compromise." In the contract was this stipulation:

"This retainer shall operate as an assignment *pro tanto* to said Second Parties of any claim or right of recovery, insofar as such assignment may be lawful, arising out of, or incident to, the matter or matters in which Second Parties are retained to perform said services, and of anything received or collected thereon or of judgment obtained thereon."

The Damrons agreed to pay all costs of the litigation.

Pursuant to this contract the attorneys, Moore & Romley, on June 21, 1941, brought an action in Maricopa County, Arizona, where the cause of action orig-

inated, against Hudson for the Damrons, alleging damages for injuries in the sum of $15,228. After the action was filed against Hudson, the Damrons, who resided in San Diego, California, without consulting their attorneys, accepted $1,900 as a compromise and settlement of their claims for damages.

The present action was brought by Moore & Romley against the Employers Casualty Company, Hudson's insurer, to recover a fee for their legal services rendered the Damrons. As a basis of the right to recover from the company, it is alleged, in substance: That the latter, with full knowledge of the plaintiffs' contract with the Damrons, induced the Damrons to settle and compromise their claim for an inadequate sum, and a sum much smaller than the plaintiffs could have obtained; that the settlement was fraudulent as to the plaintiffs, and a wrongful interference with their contractual relations with their clients.

Upon the theory that the $1,900 paid the Damrons under the compromise was two-thirds of the Employers Casualty Company's admitted liability as surety on Hudson's bond, the plaintiffs alleged that they "are entitled to one-third" of $2,850, or $950, for which they prayed judgment. The court, after hearing the case, gave plaintiffs judgment for one-third of $1,900, or for $633.33. The company perfected an appeal to this court and assigns three errors, as follows:

"I. The court erred in holding that the contract of employment operated as an equitable assignment *pro tanto* to the appellees, for the reason that rights in actions for personal injuries are not assignable.

"II. The court erred in holding that the appellant did not have the legal right to negotiate for and effect a settlement, and that such settlement was fraudulent as to the appellees, for the reason that settlements between parties are favored in and encouraged by the law, and for the reason that the appellant, acting for

and on behalf of its insured, Thomas E. Hudson, exercised a legal right to make and conclude a settlement.

"III. The court erred in entering judgment for the sum of Six Hundred Thirty Three and 33/100 Dollars ($633.33), being one-third of the amount of settlement, without any evidence of the value of the services rendered by the appellees, for the reason that George A. Damron had the right to discharge the appellees as attorneys notwithstanding the agreement, being liable only to the appellees for the value of the services rendered by the appellees, and to this amount the appellees would have been limited in an action for the recovery of their fees against the Damrons."

■ The first óf these assignments presents the question as to whether the appellees' retainer contract gave them any interest in the Damron right of action against Hudson or his insurer, the appellant. The second assignment asserts the validity of the compromise and the right of the surety to negotiate it, and the third is to the effect that if the appellees were entitled to recover it was upon *quantum meruit*, and that no evidence was submitted showing the value of their services. The sufficiency of these assignments to present the questions raised is challenged by the appellees, but we are satisfied that they conform with the rules of this court and that the objections urged are without merit. They are plain, concise statements of the errors charged.

■ ■ It is well settled in this jurisdiction that an action for personal injuries, such as the one here, does not survive In *Deatsch* v. *Fairfield,* 27 Ariz. 387, 397, 233 Pac. 887, 891, 38 A. L. R. 651, it is said:

" . . . The test of assignability of a chose in action is whether it will survive and pass to the personal representative. If it will survive it can be assigned . . . . "

This statement of the law was later approved in *United Verde Extension Mining Co.* v. *Ralston*, 37 Ariz. 554, 296 Pac. 262. The general rule is stated as follows:

"The general doctrine, both at law and in equity, is that rights of action for torts causing injuries which are strictly personal and which do not survive are not capable of being assigned . . . . " 4 Am. Jur. 252, § 30.

"In the absence of statutory modification, a cause of action for death by wrongful act is not assignable, and it has been held that, prior to verdict or judgment, the beneficiary's claim for damages is a mere expectancy, or inchoate right, not a debt, and not assignable. . . . " 6 C. J. S., Assignments, p. 1082, § 33.

In *Millsap* v. *Sparks*, 21 Ariz. 317, 321, 188 Pac. 135, 136, speaking through Mr. Justice Baker, this court said:

"The law favors the settlement of litigation, and it is well established that a client may, without the consent of his attorney, settle and compromise with his adversary all matters of litigation in such manner and upon such terms as he may deem necessary for the protection of his interests. . . . "

In *North Chicago St. R. Co.* v. *Ackley*, 171 Ill. 100, 49 N. E. 222, 226, 44 L. R. A. 177, it was decided that a contract against settling and discontinuing an action was void. The court said:

" . . . Is a contract by which the person in whose name the action is brought, and to whom it belongs, restricted from compromising or settling such claim because of a contract to that effect? In other words, is such a contract valid and binding? The law does not discourage settlements in cases for personal injuries. When a cause of action exists, its nature and amount are always involved in uncertainty, and a defendant has a right to buy his peace. The plaintiff has a right to compromise and avoid this anxiety, resulting from a cause pending to which he is a party. Any contract

whereby a client is prevented from settling or discontinuing his suit is void, as such agreement would foster and encourage litigation. . . . ''

In *Coughlin* v. *New York Cent. & H. R. R. Co.,* 71 N. Y. 443, 26 Sickels 443, 27 Am. Rep. 75, it was held that the party owning a nonassignable cause of action, such as the one here, could not by agreement ''give his attorney or other person any interest therein.''

In *Herbits* v. *Constitution Indemnity Co. of Philadelphia,* 279 Mass. 539, 181 N. E. 723, 725, the court said:

'' . . . In this Commonwealth an attorney whó prosecutes a suit has no lien for his fees or disbursements until after a final judgment has been entered. G. L. c. 221, § 50. He may not upon the bringing of a suit for personal injuries to his client protect himself for the amount of his fee by an assignment, since such a right of action is not assignable before judgment. . . . His client may without his consent or knowledge settle a pending suit brought and prosecuted by him. . . . The settlement made by the plaintiffs' client was within her contract rights. She committed no breach of her contract with the plaintiffs by making the settlement. It follows that the defendant who induced her to make it committed no legal wrong against the plaintiffs.''

▮ In their brief it is contended by appellees that they were properly given judgment on the following grounds:

''1. As assignees of the *proceeds* of suit or settlement.''

This is a concession that the appellees obtained by their agreement no interest in and to the Damrons' right of action. If they had no interest in the right of action, certainly the Damrons could compromise such action.

■ "2. As owners of an equitable lien on such proceeds."

As heretofore shown, this proposition is not tenable. It is difficult to conceive of an equitable lien on "a mere expectancy, or inchoate right, not a debt, and not assignable." 6 C. J. S., Assignments, p. 1082, § 33, *supra;*

■ "3. The settlement by appellant was fraudulent."

The policy issued by the appellant obligated it

"to pay on behalf of insured all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance, or use of the automobile."

The appellant, however,

"reserved the right to defend any action that might be brought, control the litigation, and make a settlement if it deemed it advisable."

These provisions of the policy are common and we know of no reason why they are not proper. An insurance company has as much right as any other litigant to compromise litigation against it. Neither Hudson, the insured, nor the injured persons, the Damrons, are complaining of the compromise.

■ "4. The actions of appellant constituted a wrongful interference with a contractual relation subsisting between appellees and the Damrons."

What the appellant and Hudson did was lawful and, even though it might have interfered with appellees' contract with the Damrons, it certainly gave the appellees no right of action to recover attorney fees from the appellant. Even though we may be in

sympathy with the appellees, we think a proper and legitimate construction of the rules of law, as we find them in the cases and in the texts, will not permit the recovery.

The judgment of the lower court is reversed and the cause remanded with directions to dismiss the appellees' action.

McALISTER, C. J., and STANFORD, J., concur.