410 P.2d 495

**HARLEYSVILLE MUTUAL INSURANCE COMPANY, a Pennsylvania corporation, Appellant,**

v.

**Henry LEA, Appellee.**

**1 CA–CIV 117.**

Court of Appeals of Arizona.

Feb. 3, 1966.

Rehearing Denied Feb. 28, 1966.

Review Denied March 22, 1966.

McKesson, Renaud, Cook & Miller, by Arthur E. Ross, Phoenix, for appellant.

Langerman, Begam & Lewis, by Samuel Langerman and Robert D. Myers, Phoenix, for appellee.

CAMERON, Judge.

This is an appeal by the plaintiff, Harleysville Mutual Insurance Company, hereinafter referred to as the insurance company, from an order of the court below granting the defendant Henry Lea's motion to dismiss.

We are called upon to determine the subrogation rights of an insurance company which has made payments to an insured under the medical-pay provisions of the insurance policy. Stated differently, we are called upon to determine whether the Arizona survivors' statute, 14–477 A. R.S., allows an injured party to assign a portion of his recovery for personal injury to reimburse his insurance carrier for payments made to him under the provisions of the medical-pay portion of his insurance policy.

The facts as are necessary for a determination of this matter on appeal are as follows: On 27 May, 1963, defendant Lea was involved in an automobile accident in which he sustained personal injuries necessitating medical treatment. The plaintiff insurance company paid the sum of $620.98 under the medical payment benefits provision of the insurance company's insurance policy. Said insurance policy contained the following clause:

"Medical Expense Coverage. The company will pay, on behalf of the insured, all reasonable medical expenses incurred within one year from the date of accident for bodily injury caused by accident and sustained by, 1. the name insured or a relative
* * *

"provided that no such payment shall be made unless the person to or for whom such payment is made shall have executed a written agreement that the amount of such payment shall be applied towards the settlement of any claim, or the satisfaction of any judgment for damages entered in his favor, against any insured because of bodily injury arising out of any accident to which the liability coverage applies."

Upon receipt of the amount of $620.98, pursuant to the provision of the insurance company's policy, defendant Lea signed the following "receipt and release under medical expense coverage", which in part provides:

"In consideration of the payment to me (us), or on my (our) behalf of the sum of six hundred and twenty and ninety-eight one-hundredths dollars ($620.98) by the HARLEYSVILLE MUTUAL CASUALTY COMPANY and/or HARLEYSVILLE MUTUAL INSURANCE COMPANY, hereinaf-

ter called COMPANY, as their interest may appear, the receipt of which is hereby acknowledged and the undersigned hereby fully and forever releases and discharges COMPANY and successors and assigns from any and all liability claim and demand whatsoever under the medical expense coverage of policy number HA 1 37 32 issued to HENRY LEA and COMPANY arising out of an accident which occurred on or about May 27, 1963, resulting in injuries to Henry Lea * * *.

"In further consideration of the aforesaid payment, the undersigned hereby assigns and transfers to COMPANY its successors and assigns, any and all claims and demands against any other person, persons, property or corporation arising from or in any manner connected with such loss or damage and COMPANY is hereby subrogated in the place of and to the claim and demands of the undersigned against such persons, property or corporation, to the extent of such medical payment above named."

Defendant Lea then entered into settlement with the other party to the accident, and refused to reimburse the insurance company to the extent of the medical benefits previously paid to the defendant Lea. The insurance company then brought suit for the amount of the medical payments under the subrogation clause of the insurance policy and under the Receipt and Release signed by the defendant Lea. After a request for admission of facts by the plaintiff, the defendant moved to dismiss pursuant to Rule 12(b)(6) of the Arizona Rules of Civil Procedure, 16 A.R.S. which was granted and plaintiff appeals.

Subrogation has been defined as: "The substitution of one person in the place of another with reference to a lawful claim, demand or right, Whyel v. Smith, 101 Fla. 971, 134 S[o]. 552, 554; so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. Home Owners' Loan Corporation v. Baker, 299 Mass. 158, 12 N.E.2d 199." Black's Law Dictionary, 4th Edition.

Any rights that the insurance company may have as a subrogee in the instant case, either by virtue of the insurance contract or the receipt and release signed by the defendant Lea, must be based upon the ability in law of the defendant Lea to assign in whole or in part, his cause of action for personal injuries to the insurance company. If the defendant Lea may not in law assign his cause of action to the plaintiff either in whole or in part, then his cause of action may not be subrogated.

Prior to the enactment by the Arizona state legislature of Section 14–477, A.R.S., the Arizona courts adhered to the generally accepted rule that rights of action for torts causing injuries which are strictly personal do not survive, and may not be assigned prior to the verdict or judgment. Employers Casualty Company v. Moore, 60 Ariz. 544, 142 P.2d 414 (1943), Deatsch v. Fairfield, 27 Ariz. 387, 233 P. 887, 38 A.L.R. 651 (1925), United Verde Extension Mining Company v. Ralston, 37 Ariz. 554, 296 P. 262 (1931). And our court stated that unless the legislature should enact a survival statute that the right of action died with the tort-feasor. Rodriquez v. Terry, 79 Ariz. 348, 290 P.2d 248 (1955).

In 1955, the Arizona state legislature passed the following statute, Section 14–477 titled:

"Action by or against personal representative; survival of causes of action:

"Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that up-

on the death of the person injured, damages for pain and suffering of such injured person shall not be allowed."

It is readily seen that while *liability* for pain and suffering survives the death of the person causing injury that a *cause of action* for pain and suffering in favor of the person injured does not survive the death of the injured person.

At common law, a chose in action for personal injuries could not be assigned and would not survive. Most writers objected to the assignability because they felt that unscrupulous people would purchase causes of action and thereby traffic in law suits for pain and suffering. Rice v. Stone, 83 Mass. 566 (1861). Down to the present day, in the absence of statutes to the contrary, tort actions for personal injuries do not survive and are not assignable. Ishmael v. City Electric of Anchorage, 91 F.Supp. 688, 12 Alaska 721 (1950). While there may have been other reasons for frowning upon the assignability of personal injury claims, a vast majority of the early rulings based the non-assignability of a claim for personal injury upon the grounds that at common law such claims did not survive the death of the injured person. It is not then surprising to note that when statutory provisions providing for the survival of a cause of action for personal injuries have been enacted, that the courts have generally followed the rule that the claim is also assignable. The State of Nevada follows this rule— that if the cause of action is survivable,

"A fortiori, assignment of the proceeds of a personal injury settlement is permissible, and such proceeds may also be the subject of contractual subrogation." Davenport v. State Farm Mutual Automobile Insurance Company, Nev., 404 P.2d 10, 12 (1965).

Some states, of course, provide by statute that the cause of action may survive, but may not be assignable. Peller v. Liberty Mutual Fire Insurance Co., 220

Cal.App.2d 610, 34 Cal.Rptr. 41 (1963), and some states adopt the policy that the cause of action may not be assigned, but that the proceeds may. Neilson Realty Corp. v. Motor Vehicle Accident Indemnification Corp., 47 Misc.2d 260, 262 N.Y.S.2d 652 (1965). However, the view that a statute which provides for the survival of a cause of action of necessity authorizes the assignment of the same cause has been rejected in a number of jurisdictions. Bethlehem Fabricators v. H. D. Watts Co., 286 Mass. 556, 190 N.E. 828, 93 A.L.R. 1124 (1934). As has been stated:

"In some jurisdictions it is held that a right of action for personal injuries is not assignable, even though such action is made survivable by statute. This result has been reached under the view that nothing is assignable, either at law or in equity, which does not directly or indirectly involve a right to property, and that the statute providing for the survival of an action for personal injuries was not intended to transform the right of action into a property right, and also under the view that the assignment of a cause of action for personal injuries is contrary to public policy." Hereford v. Meek, 132 W.Va. 373, 52 S.E.2d 740, 750 (1949).

We feel and therefore hold, that the better reasoned rule is that even though a cause of action for personal injury may survive, an action still may not be assignable either in whole or in part prior to judgment. Two recent cases support our view. In one it was stated:

"If (as we have determined) Chumbley's cause of action for personal injury, which embraced and included his right to recover his medical expenses, was not assignable, it necessarily follows that the purported assignment of such right of recovery by paragraph 15 of the policy 'conditions' was of no validity and effect. (citations) From all of the foregoing, we think it obvious that medical expense does not stand 'on the same footing as property damage'

* * *." Travelers Indemnity Company v. Chumbley, Mo.App., 394 S.W. 2d 418 at 423 (1965).

Also, a Washington case construing a statute similar to ours:

"In unequivocal language the legislature has established that all causes of action survive, provided, however, that there can be no recovery by a personal representative of damages for 'pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased.' Any other element of damage, except those enumerated, would appear to survive and thus be assignable.

*    *    *    *    *    *

"The general rule is stated in Restatement, Contracts § 547:

'An assignment of a claim against a third person * * * is illegal and ineffective if the claim is for * * * (d) damages for an injury the gist of which is to the person rather than to property, unless the claim has been reduced to judgment.' * * *

"We believe it is abundantly clear (as did the trial court) that the gist of Harvey's action against Cleman is for pain and suffering. In the absence of a segregation by the jury of its $7,800 verdict, Harvey's statement of claim has sufficient attributes to place it under the proviso of RCW 4.20.046 so that there could be no recovery by a personal representative; hence the attempted assignment is of no effect." Harvey v. Cleman, Wash., 400 P.2d 87, 90 (1965).

Although the historical reasons given for the non-assignment of a personal injury claim have been based mostly on the non-survivability of the cause of action, we believe that the non-assignability rule standing alone has much support in public policy. Although we are not called upon to discuss the absence of legislation which would authorize the control of policy provisions in medical benefit insurance, allowing the subrogation or assignment of a cause of action for personal injuries is so fraught with possibilities, that the rule in Arizona against assignment should remain the same until changed by the legislature as has been done (although only in very limited circumstances) in the case of claims under the Workmen's Compensation Act. (A.R.S. 23–783, 23–1023, 23–1068).

Neither are we called upon to discuss the possible conflict between the language of the policy we are considering and the language of the receipt and release. The former could be construed to limit subrogation rights to those rights which could be urged against the tort-feasor and the latter could be construed to authorize subrogation rights against other insurers of the policy holder, including companies issuing so-called "health and accident" policies.

It is noted that there is an apparent conflict between this holding and the holding of the Arizona Supreme Court in Linder v. Lewis, et al., 85 Ariz. 118, 333 P.2d 286 (1958), which case would also appear to overrule the holding in Employers Casualty Co. v. Moore, supra. We think that the cases may be distinguished, however. In the instant case, we have a contract of insurance entered into prior to the accident providing for payments under the medical pay portion of the contract. The insured paid a premium for this policy and is entitled to the medical payments regardless of what further action he may take in bringing suit against the tort-feasor. Should he recover after suit and trial, he will have to pay a portion of this recovery for attorney's fees and costs, an expense which the appellant herein ignores in demanding the return of the full amount paid to appellee. To require the insured to subrogate these funds or to assign the amount to the insuror, especially when there is no way of apportioning the amount in the whole of the judgment or settlement, can only lead to further litigation, subterfuge and deceit.

In Linder v. Lewis, supra, the Arizona Supreme Court upheld a charging lien against a judgment by the attorneys who had represented the plaintiff on a contin-

gent fee basis in a successful action for malicious prosecution. In addition to the cause of action being different, the difference in the contingent fee contract with the attorney lies in the fact that the contract was entered into between the parties after the event for services to be performed by the attorney in perfecting any claim the injured might have against the tort-feasor. It is not unreasonable that an attorney should have an interest in a fund he is helping to create by the services he is to perform. Nothing we say in this opinion should be construed to prevent an assignment to an attorney for services to be rendered in connection with the prosecution of a claim against the tort-feasor and nothing herein should be construed to prevent an assignment of all or part of a claim for personal injuries which has been reduced to judgment or otherwise liquidated.

The decision of the court below is affirmed.

STEVENS, C. J., and DONOFRIO, J., concur.