489 P.2d 837

**STATE FARM MUTUAL INSURANCE
COMPANY, and Gene C.
Stevens, Appellants,**

v.

**ST. JOSEPH'S HOSPITAL et al., Appellees.**

**No. 10343.**

Supreme Court of Arizona,
In Banc.

Oct. 7, 1971.

Lewis & Roca by John P. Frank, Michael J. LaVelle, P. Robert Moya, Phoenix, for appellants.

Hughes, Hughes & Conlan by John C. Hughes, Phoenix, for appellees.

UDALL, Justice:

This is an appeal by defendant, State Farm Insurance Company, from a jury verdict in favor of the plaintiffs, Dr. Lee P. Davis and St. Joseph's Hospital for compensatory damages and in favor of plaintiff, Hughes & Hughes for compensatory and punitive damages resulting from the tortious interference with a contract.

The facts as are necessary for a determination of this matter on appeal are as follows: In July of 1965, plaintiff, John C. Hughes of Hughes & Hughes, was retained as counsel to represent one Nellie Silverheels for a personal injury claim incurred as a result of an automobile accident. A one-third contingent fee agreement was entered into at that time. Treatment of Mrs. Silverheels' injuries was rendered by plaintiffs, St. Joseph's Hospital

and Dr. Lee Davis, and resulted in a hospital bill of $1,153 and a doctor's bill of $392. Subsequently, all the plaintiffs and Mrs. Silverheels entered into an agreement, separate and distinct from the contingent fee agreement. Since the nature of this agreement is in issue, its text is herein reprinted below.

"I, the undersigned, in consideration of medical services rendered by Dr. Lee P. Davis (St. Joseph's Hospital) for treatment of injuries sustained in an automobile accident which occurred on or about May 16, 1965, and for the treatment of which I am indebted to said Doctor, do hereby authorize attorney John C. Hughes, of Hughes & Hughes, to deduct and pay over to the said doctor the sum of Three Hundred Ninety Two Dollars ($1,024.95) out of my money that may become payable by reason of the claim, suit or settlement brought to recover damages."

Mrs. Silverheels, through her attorney John Hughes, then instituted suit. The law firm of Lewis, Roca, Beauchamp & Linton, by William Grainger appeared for the defendant in that case, and the insurance carrier was State Farm. Defendant herein, Gene Stevens, was the Claims Superintendent and was, in fact, an attorney licensed to practice law in the State of Arizona. The adjuster in the matter was Lawrence Bauer.

The defendants knew Mrs. Silverheels was represented by counsel and were on notice of the agreement between the plaintiffs and Mrs. Silverheels. During the course of negotiations with Hughes, offers of $1400 and $1750 were made, both authorized by Mr. Stevens. The first was rejected and before any decision on the second was reached, a letter of discharge signed by Mrs. Silverheels was received by Mr. Hughes. On the same day, July 6th, a letter was sent to Mr. Bauer verifying the discharge of Mr. Hughes. Mrs. Silverheels testified that these two letters were written by her landlady, Mrs. Baum, in the presence of Mr. Bauer. Mr. Bauer denied

this, and testified that Mrs. Silverheels had on numerous occasions sought to directly negotiate her claim with him, but he refused since she was represented by counsel. It was only after receiving confirmation of Hughes' discharge, Bauer stated, that he pursued direct negotiations with her. Plaintiffs contend Bauer supervised the writing of these discharge letters while Mrs. Silverheels was very ill and point to the fact that one of the letters referred to Mrs. Silverheels' insurance claim number which was not readily known by or available to her. On July 7th, a draft in the amount of $1325 was issued in favor of Mrs. Silverheels, who on the same day executed a release and stipulation of dismissal with prejudice. The stipulation was prepared by defendant, Stevens, although he was not the attorney of record. As to these papers, Mrs. Silverheels recalled signing them but testified she was unaware of their significance because she was very ill at that time and in fact had to be helped out of bed by Mr. Bauer to sign them. Thereafter Mr. Bauer and Mrs. Baum escorted Mrs. Silverheels to the bank and the draft was cashed. Defendant Stevens testified he prepared the stipulation of dismissal while Mr. Hughes was attorney of record in spite of the fact that he admitted he was familiar with Rule 12(c), Uniform Rules of Practice, 17 A.R.S. and Rule 80(e), Rules of Civil Procedure, 16 A.R.S. providing that no attorney shall be substituted as attorney of record except by order of the court and that an attorney is responsible for the conduct of the action until withdrawn by the court.

Plaintiff Hughes instituted this action against the defendants alleging the tort of wrongful interference of his contract with his client, Mrs. Silverheels. Plaintiffs St. Joseph's Hospital and Dr. Davis seek to recover for the tortious interference with their contract with Mrs. Silverheels authorizing Mr. Hughes to act as a collecting agent for them. The jury returned a verdict in favor of St. Joseph's, Dr. Davis and Mr. Hughes for compensatory damages in the amounts of $1,024.95, $392.00 and $461.30 respectively. In addition Mr. Hughes was awarded punitive damages in the amount of $5,000. The trial court held that Hughes had waived the compensatory damages in his closing argument to the jury but held the waiver not applicable to the punitive damages.

For purposes of this appeal the defendant raises two main questions for this Court to consider:

1. "May an attorney, retained on a contingent fee basis to represent a plaintiff in a personal injury case, recover his fees and punitive damages from the defendant's insurance company if his client dismisses him and settles with the insurance company?

2. "May a doctor or a hospital recover from an insurer for interference with contractual relationships when the insurance company pays the claimant directly rather than a third party who was authorized to use the money to pay the claimant's doctor and hospital bills?"

Defendant argues that a client has absolute right to dismiss his attorney at any time, with or without cause, and that this right to discharge is not affected by the existence of a contingent fee agreement between the attorney and client. Defendant argues further that it is the policy of this state to encourage settlement and that the client can settle his claim at any time, whether or not he is represented by counsel, citing Millsap v. Sparks, 21 Ariz. 317, 188 P. 135 (1920); and Employers Cas. Co. v. Moore and Romley, 60 Ariz. 544, 142 P.2d 414 (1943) as authority for this proposition. In the Moore case, the firm of Moore and Romley was retained on a contingent fee basis to represent the plaintiffs in a personal injury action. The plaintiffs, in that case, after suit had been filed, but before discharging their attorney, settled with the insurance company of the alleged tortfeasor. Moore and Romley then instituted suit against the company for their fees. This Court, in reversing

the trial court's judgment for plaintiffs, Moore and Romley, held that the plaintiffs were not the owners of an equitable lien on the proceeds of settlement since "[i]t is difficult to conceive of an equitable lien on a 'mere expectancy, or inchoate right, not a debt, and not assignable.'" Employers Cas. Co. v. Moore & Romley, 60 Ariz. at 550, 142 P.2d at 416. Since the attorney who prosecutes a suit has no lien until after final judgment, the court reasoned he cannot recover his fees from the insurance company who induced the client to settle. The court further held:

"* * * even though it [defendant's acts] might have interfered with appellees' contract with the Damrons [the clients], it certainly gave the appellees *no right of action to recover attorney fees* from the appellant." (Emphasis supplied)

This holding, the defendants reason, precludes recovery in the case at bar. We agree with the holding in *Moore,* and hold there is no cause of action in contract for fees against the insurance company where settlement is before judgment and no lien arises which can be enforced. But we further hold that *Moore* does not control the case at bar. The plaintiffs here are suing in tort and not on contract and thus are not bound by *Moore.* While this is not altogether clear from plaintiffs' complaint, it became evident during trial when the court in trying to determine the issues involved queried:

"The Court: * * * Do I understand your cause of action then is what—inducing wrongfully (sic) inducing a breach of contract?

Mr. Hughes: Yes, your Honor. The act lies in breaching a contract.

The Court: Inducing a breach of contract?

Mr. Hughes: Yes."

* * * * * *

"The Court: * * * Is the gravamen of the claim that you are asserting is

that a contract has wrongfully been breached and a contract has wrongfully been induced by the plaintiff (sic) to be breached?

Mr. Hughes: That's the heart of it."

Likewise, this case is different from and not bound by Linder v. Lewis, Roca, Scoville & Beauchamp, 85 Ariz. 118, 333 P.2d 286 (1958) which has been cited by the plaintiffs. There, the action was begun as a garnishment suit by one of the debtors of Louis Marches, an individual whom Lewis & Roca had successfully represented in an action resulting in a verdict and judgment in favor of Marches. Lewis & Roca intervened and were awarded their fees. It is important to note here that the case was pursued to judgment. This resulted in a charging lien in favor of Lewis & Roca, which the judgment creditor, their client, attempted to assign. Clearly there was no judgment in the case at bar on which plaintiffs' lien could arise and thus *Linder* is inapplicable.

The question we must resolve then is whether such a cause of action in tort in relation to the attorney-client contract exists in law. While no Arizona case is cited involving the tortious interference with the attorney-client relationship, we hold such a cause of action exists. Plaintiffs cite Meason v. Ralston Purina Company, et al, 56 Ariz. 291, 107 P.2d 224 (1940) as authority for the existence of this cause of action, but there the contract interfered with was not an attorney-client one. The attorney-client relationship represents a unique problem in this area. It is questioned whether a cause of action can exist for the tortious interference of this contract when the law in Arizona is clear that a client has the absolute right to terminate the attorney-client relationship at any time with or without cause, 7 Am.Jur. 2d Attorneys at Law § 138 (1963), and may without the consent of his attorney settle and compromise his claim with his adversary. Millsap v. Sparks, supra; Employers Cas. Co. v. Moore & Romley, su-

pra; Richfield Oil Corp. v. LaPrade, 56 Ariz. 100, 105 P.2d 1115 (1940). Thus a strong argument can be made that since the client possesses these rights, no such tort of intentionally inducing a breach of this contract can exist. Nevertheless, we believe that this relationship is a vital one, and is entitled to the protection of the law. That a valid contract exists between the attorney and client is unquestioned. While the attorney has no lien until after judgment or settlement, he still has a valuable interest in a contingent fee contract to the fund he helps to create. It is an interest entitled to be protected from the wrongful interference from third parties who act with knowledge of its existence. Such a contract is more than a contract at will which has been held in other jurisdictions to be entitled to protection from interfering third parties. See Speegle v. Board of Fire Underwriters, 29 Cal.2d 34, 172 P.2d 867. While we recognize the existence of such a cause of action, we nevertheless reaffirm the power of the client at any time to discharge his attorney and to settle or compromise his own claim. Our law does not bind a person to one attorney merely because he has entered into a contingent fee relationship. If the client in the exercise of this power discharges the attorney under a contingent fee contract before his lien arises, that attorney generally has a remedy only against the client for the value of his services. Walker v. Wright, 28 Ariz. 235, 236 P. 710 (1925). But when a third person intentionally interferes with *this contractual relationship for his own* benefit, either by unlawful means or by lawful means where there is a lack of sufficient justification, by inducing a client to terminate the relationship with his attorney or otherwise act with the intent to deprive the attorney of his remuneration, a cause of action arises in tort for the damages resulting from that act. The damages may be the amount of compensation the attorney would have realized if he had completed the contemplated services.

Our conclusion that such a cause of action exists is supported by cases from other jurisdictions. Herron v. State Farm Mutual Insur., 14 Cal.Rptr. 294, 363 P.2d 310 (1961); State Farm Fire Insur. Co. v. Gregory, 4 Cir., 184 F.2d 447 (South Carolina law); Employers Liab. Assurance Corp. v. Freeman, 10 Cir., 229 F.2d 547 (Oklahoma law).

In the case at bar, plaintiffs do not complain that there has been a settlement, *for the right of a client to settle his case is* not here being questioned. Plaintiffs complain that the defendants interfered with their contractual relations with Mrs. Silverheels, and that as a result thereof they have been deprived of the benefits of this contract. There was sufficient evidence for the jury to find such an interference occurred without justification. There was evidence that Mrs. Silverheels did not know the nature of the papers she signed, that she was taken advantage of by Mrs. Baum and Mr. Bauer of State Farm and that this was done to effect a settlement far below the previous offer and with knowledge of the Hughes contract and Dr. Davis and St. Joseph's agency agreement. The jury could find that Mr. Bauer dealt with Mrs. Silverheels before her attorney Mr. Hughes was dismissed and, in fact, that he composed or at least supervised the letter of dismissal.

While there is no direct evidence to show the adjuster induced Mrs. Silverheels not to pay her attorney his fees there was sufficient evidence for the jury to find that defendants did otherwise induce her to terminate the attorney-client relationship, that defendants through their agent Stevens failed to comply with the Rules of Practice and Civil Procedure, and further that he acted as attorney of record in drawing up the Stipulation of Dismissal and that as a result of these facts plaintiffs were injured.

It is clear that the conduct of the insurance company was detrimental not only to the interest of the attorney but to the client, Mrs. Silverheels, as well, since she was deprived of the advice and aid of her counsel.

We think the better approach to maintaining a balance between the client's rights over his claim on one hand and protecting the attorney's right to be free from interference with his client on the other is to have the client discharge the attorney on his own accord or by means of an uninterested attorney with no assistance from his adversary. Once the attorney is discharged as of record the way is clear for anyone to deal directly with the client.

In reference to the claim of plaintiffs, Dr. Lee Davis and St. Joseph's Hospital, defendants contend that their cause of action cannot stand. They reason that any enforcible interest on the part of these parties must arise from a reading of their agreement with Mrs. Silverheels as an assignment of her cause of action. Case law in this jurisdiction as in others is clear on the policy against assignments of a cause of action in tort for personal injuries. Employers Cas. Co. v. Moore & Romley, supra; Deatsch v. Fairfield and Maryland Cas. Co., 27 Ariz. 387, 233 P. 887 (1925); United Verde Extension Mining Co. v. Ralston, 37 Ariz. 554, 296 P. 262 (1931). In Harleysville Mutual Insurance Co. v. Lea, 2 Ariz.App. 538, 410 P.2d 495 (1966), our Court of Appeals continued this policy even though the Arizona State Legislature passed § 14–477 which provided for the survival of such personal injury causes of action.

> "We feel and therefore hold, that the better reasoned rule is that even though a cause of action for personal injury may survive, an action still may not be assignable either in whole or in part prior to judgment." Harleysville Mutual Insurance Co. v. Lea, 2 Ariz.App. at 541, 410 P.2d at 498.

▆▆▆ After a close reading of this agreement we hold it is not an assignment either in whole or in part. The agreement in effect allows Hughes & Hughes to act as a collecting agent for plaintiffs Dr. Davis and St. Joseph's Hospital. An assignment creates an interest in property and as to the portion assigned, it can be conveyed by the assignee who is co-owner with the assignor. Millsap v. Sparks, supra. The agreement entered into created no such interest. Obviously if the claim had never resulted in a settlement or judgment or if the client had discharged Hughes without interference, as she was entitled to do, plaintiffs, St. Joseph's and Dr. Davis, would have had no interest in a subsequent settlement.

Our holding that the agreement does not constitute an assignment does not necessarily mean plaintiffs, St. Joseph's and Dr. Davis, have no interest to enforce in this lawsuit. Their rights under the agreement were prejudiced by the wrongful interference by the defendants which in the normal course of events would have led to a settlement in this case and a collection of funds by Mr. Hughes in favor of the other plaintiffs. As we have said the plaintiffs may not have recovered at all if Mrs. Silverheels had discharged her attorney of her own volition without the defendants' interference. But just as we do not inquire, in normal commercial contracts where interference has been charged, into subsequent possible illegality or impossibility which might preclude recovery, absent interference, we do not here, look into the possibility of a proper discharge of Mr. Hughes where it has not occurred.

▆▆▆ We now turn to the award of punitive damages which the defendants contend was error because:

1. The court below erred in instructing the jury on punitive damages since there was no evidence of willful, wanton indifference to the plaintiffs' interests, and

2. The plaintiffs through Hughes waived all rights to punitive damages.

Punitive damages should not be allowed unless there is a showing of want or reckless acts or spite or ill will. Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161. Punitive damages are not to

compensate plaintiff but rather to punish defendant. We hold that there was sufficient evidence for the jury to find the existence of such reckless indifference to the interests of the plaintiffs in this case. It is clear that such practices as were shown are of a kind we seek to discourage. Such breaches of ethics and overreaching as were perpetrated on Mrs. Silverheels with the knowledge of its effect upon the plaintiffs is clearly conduct which the jury in its discretion can choose to punish.

We must also decide if Hughes' waiver was applicable to the punitive award as well as the compensation award. In his summation Mr. Hughes stated to the jury that:

"At this time, let me tell you that on behalf of Hughes and Hughes, we waive everything over one dollar as to actual expenses, as to the monies that we have advanced on behalf of Mrs. Silverheels in her case, or the one-fourth of the $1750 that we got through the effort of filing the lawsuit. We think that this is a proper case for exemplary damages. As far as I am concerned, it can be nominal on behalf of Hughes and Hughes. As far as the hospital and doctor, that's within your discretion." (RT 176)

It is clear from this that Mr. Hughes waived all actual damages. As to the punitives, Mr. Hughes declared that the jury, in its discretion, could make them nominal as to Hughes & Hughes if they so wished. They chose instead to award Hughes & Hughes $5000. · Since there has been no showing that this is excessive in view of the compensatory amounts awarded, we will not interfere with this exercise of the jury's discretion.

For the reasons herein stated, we affirm the trial court's awards of damages in favor of the plaintiffs.

STRUCKMEYER, C. J., HAYS, V. C. J., and LOCKWOOD and CAMERON, JJ., concur.