T.C. Memo. 1998-364


UNITED STATES TAX COURT


JAMES T. SINYARD AND MONIQUE T. SINYARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11056-96.                    Filed October 7, 1998.


<u>David P. Pearson</u> and <u>Paul W. Markwardt</u>, for petitioners.

<u>Mary E. Dean</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax for 1992 in the amount of
$115,679.

The issue for decision is whether $252,608, among other
funds, awarded in class action lawsuits is excludable from
petitioner James T. Sinyard's income.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1992. References to petitioner are to James T. Sinyard.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Scottsdale, Arizona.

In 1989, petitioner joined two class action lawsuits pending in the U.S. District Court for the District of Minnesota (namely, Glass v. IDS Fin. Servs., Inc., Civ. No. 4-89-76 (Glass), and Stephens v. IDS Fin. Servs., Inc., Civ. No. 4-89-115 (Stephens). The law firm of Winthrop and Weinstine represented the class plaintiffs.

In the original and amended complaints in Glass and in Stephens, it was alleged that IDS Financial Services, Inc., IDS Life Insurance Co., and IDS Financial Corp. (IDS): (1) Engaged in a pattern and practice of age discrimination against older division managers employed by IDS in violation of the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602, the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, and State law; (2) imposed illegal chargebacks against its division managers; and (3) intentionally inflicted emotional distress on certain of its

employees; and relief was requested in the form of, among other things, punitive damages and attorney's fees.

At the time the classes closed in <u>Glass</u> and <u>Stephens</u>, a total of 32 class plaintiffs had joined in the lawsuits.

ADEA class actions generally constitute opt-in class actions and, after closure of the class, only plaintiffs who have already elected to do so may be part of the class. The <u>Glass</u> and <u>Stephens</u> actions both constituted opt-in class actions of which petitioner was an opt-in member.

The class plaintiffs in the <u>Glass</u> and <u>Stephens</u> actions, including petitioner, entered into contingency fee agreements with Winthrop and Weinstine under which it was provided that the class plaintiffs would be obligated to reimburse Winthrop and Weinstine for out-of-pocket expenses and to pay Winthrop and Weinstine attorney's fees on a contingency fee basis. The agreements provided that out-of-pocket expenses incurred during pendency of the actions would be billed by Winthrop and Weinstine to the class plaintiffs on a monthly basis and fees due Winthrop and Weinstine under the contingency fee agreements would be billed at the conclusion of the actions.

Under the specific contingency fee agreement that petitioner herein entered into on September 18, 1989, with regard to payment of attorney's fees, it was provided, among other things, as follows:

> in the event of a recovery, Winthrop and Weinstine will be paid one-third (1/3) of the monetary amount obtained in the lawsuit, whether by settlement or jury award.

and

> In the event that an award of attorney's fees is received by you as a plaintiff, then that award will be considered as part of your total recovery with one-third of the amount to be paid to Winthrop and Weinstine and the remainder to be retained by you.

Under May 29, 1990, amendments to the contingency fee agreements, it was provided that the amount of attorney's fees would be "determined from the total monetary award actually received by each plaintiff."

Correspondence from Winthrop and Weinstine to class action plaintiffs dated October 2, 1989, stated:

> Any court-awarded attorney's fees would be part of your recovery from which the contingent fee will be calculated.

Correspondence from Winthrop and Weinstine to class action plaintiffs dated May 24, 1990, stated:

> There are also some other categories of damages asserted by all plaintiffs collectively. The first of these is attorney's fees. Whether proceeding on a contingent basis (as we are here) or on an hourly basis, the prevailing plaintiffs in an employment discrimination case are entitled to receive an award of attorney's fees.

and

After considering these various matters, the Steering Committee has unanimously recommended to their fellow plaintiffs that attorney's fees, sanctions, costs and disbursements and similar awards which are not individualized to any particular plaintiff should be awarded equally on a pro rata basis to every plaintiff. For example, if the plaintiffs collectively receive a $3,200,000 award for attorney's fees for prevailing in the action, then each individual plaintiff would be entitled to $100,000 of that award.

During pendency of the <u>Glass</u> and <u>Stephens</u> class actions, Winthrop and Weinstine mailed routine billings to class members. These billings detailed the nature of out-of-pocket legal expenses incurred.

The amount of out-of-pocket expenses that, during the litigation, were billed, charged to, and paid by individual class plaintiffs varied depending on, among other things, financial circumstances of the individual plaintiffs.

During pendency of the class actions, petitioner paid $4,050 to Winthrop and Weinstine in reimbursement of out-of-pocket expenses incurred by Winthrop and Weinstine.

On or about April 16, 1990, a motion by the U.S. Equal Employment Opportunity Commission (EEOC) to intervene in the <u>Glass</u> and <u>Stephens</u> class actions was granted. Therein, EEOC sought a permanent injunction against IDS to prohibit IDS from engaging in any further discrimination against its employees on the basis of age. The EEOC also sought an order requiring IDS to institute and carry out policies, practices, and programs to

provide equal opportunity for individual employees of IDS age 40 and older.

The injunctive relief sought by EEOC was prospective in nature and intended to benefit all employees of IDS including employees who were plaintiffs in the Glass and Stephens class actions. Intervention by EEOC in the Glass and Stephens class actions enhanced the merits of the class action lawsuits against IDS.

Legal services of Winthrop and Weinstine on behalf of the class action plaintiffs complemented the legal services of EEOC's attorneys, and vice versa.

On November 21, 1991, in the Glass and Stephens class actions, the District Court granted partial summary judgment in favor of IDS and against the class action plaintiffs dismissing certain breach of contract, ERISA, and tort claims made against IDS. Some of the legal services performed by Winthrop and Weinstine prior and subsequent to November 21, 1991, were attributable to the advancement of plaintiffs' contract and ERISA claims.

In early August of 1992, a comprehensive settlement in the Glass and Stephens class actions was entered into in which IDS agreed to pay $35 million to resolve all remaining claims relating to the above class actions, including claims for litigation costs and attorney's fees.

On August 26, 1992, the District Court approved the terms of the comprehensive settlement.

Under terms of the settlement, the parties agreed and stipulated that (based on the total settlement amount of $35 million to be awarded to the class plaintiffs) the amount of attorney's fees owed to Winthrop and Weinstine was $11,166,666 (one-third of the total settlement amount after deduction of out-of-pocket expenses).

The calculation under the settlement agreement of attorney's fees in the amount of $11,166,666 used the same formula for the calculation of attorney's fees that was specified in the contingency fee agreements that the class plaintiffs had entered into with Winthrop and Weinstine (namely one-third of the total settlement amount after deduction of out-of-pocket expenses).

Pursuant to the settlement, out-of-pocket expenses in the total amount of $1.5 million were first deducted from the total award of $35 million. One-third of the $33.5 million balance of the $35 million award was then allocated to lost wages of the class plaintiffs; one-third of the $33.5 million balance was allocated to tort claims of the class plaintiffs; and one-third of the $33.5 million balance was allocated to attorney's fees.

With respect to the portion of the settlement award allocated to lost wages of the class plaintiffs, IDS issued separate checks directly to the individual class plaintiffs from which Federal and State income taxes were withheld.

With respect to the portions of the settlement award allocated to tort claims of the class plaintiffs and attorney's fees, IDS issued a single check directly to Winthrop and Weinstine in the total amount of $23,783,333, of which $12,616,666 represented the portion allocated to tort damages and $11,166,666 represented the portion allocated to attorney's fees. The total proceeds from this check were deposited into a trust account on behalf of the class action plaintiffs.

In the instant case, the parties have stipulated that the $862,906 that petitioner received under the above settlement is allocable as follows:

>
> $273,573 --- Back wages and taxable as ordinary income;
> $109,429 --- Tort damages and excludable from income;
> $164,144 --- Tort damages and includable in income;
> $ 63,152 --- Attorney's fees attributable to tort damages excludable from income and therefore also excludable from income;
> $252,608 --- Attorney's fees attributable to taxable portion of funds received and the tax treatment of which is in dispute herein.

On their 1992 individual joint Federal income tax return, of the total $862,906 in funds that was received from IDS on petitioner's behalf, petitioners did not report as income the $252,608 portion of the funds that was attributable to attorney's fees allocable to the taxable portion of the funds received.

On audit, respondent determined that the $252,608 relating to attorney's fees constituted taxable income to petitioners and

is deductible to petitioners only as a miscellaneous itemized deduction under section 67.

OPINION

Attorney's fees and costs awarded to prevailing parties in litigation generally are treated as received by the parties, not by the attorneys, and as items of taxable income to the prevailing parties. See Alexander v. Commissioner, 72 F.3d 938, 946-947 (1st Cir. 1995), affg. T.C. Memo. 1995-51; Baylin v. United States, 43 F.3d 1451, 1455 (Fed. Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 418-419 (1995), affd. 121 F.3d 393, 395-396 (8th Cir. 1997); Estate of Gadlow v. Commissioner, 50 T.C. 975, 979-980 (1968); Petersen v. Commissioner, 38 T.C. 137, 151-152 (1962); Coady v. Commissioner, T.C. Memo. 1998-291; Hayes v. Commissioner, T.C. Memo. 1997-213; Hardin v. Commissioner, T.C. Memo. 1997-202; Martinez v. Commissioner, T.C. Memo. 1997-126.

Also, taxpayers generally are treated as realizing taxable income when their expenses are paid by another. Sec. 61; Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). The Supreme Court in Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929), stated that "The discharge by a third person of an obligation to him is equivalent to receipt by the person taxed." See also United States v. Boston & Me. R.R., 279 U.S. 732, 734 (1929).

In ADEA cases, it is established that only the prevailing parties, not the parties' attorneys, have standing to seek attorney's fees.  Benitez v. Collazo-Collazo, 888 F.2d 930, 933 (1st Cir. 1989); Soliman v. Ebasco Servs., Inc., 822 F.2d 320, 323 (2d Cir. 1987); Brown v. General Motors Corp., 722 F.2d 1009, 1011 (2d Cir. 1983); Rainsbarger v. Columbia Glass & Window Co., 600 F. Supp. 299, 301-302 (W.D. Mo. 1984).

We recognize that there is case law treating amounts received in litigation to cover attorney's fees as not constituting taxable income.  In Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957), the taxpayer entered into a contingency fee agreement with her attorneys under which the taxpayer agreed to pay her attorneys 40 percent of any funds recovered.  In Cotnam, we held that the contingency fee agreement did not transfer any interest in the judgment to the attorneys, and we held that the attorney's fees that were awarded were to be included in the taxpayer's income.  Cotnam v. Commissioner, 28 T.C. at 954.

The Court of Appeals for the Fifth Circuit reversed and held that under Alabama law the effect of the contingency fee agreement was to establish in favor of the attorneys an equitable lien on 40 percent of the funds recovered, and the Court of Appeals concluded that the portion of the funds allocated to attorney's fees was to be treated as owned by the attorneys, not by the taxpayer, and therefore that the funds allocated to

attorney's fees did not constitute income to the taxpayer.
Cotnam v. Commissioner, 263 F.2d at 125, citing 46 Ala. Code sec.
64 (1940).

In Davis v. Commissioner, T.C. Memo. 1998-248, we followed
the Court of Appeals opinion in Cotnam but only because the same
Alabama law and the same appellate venue were involved as in
Cotnam. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd.
445 F.2d 985 (10th Cir. 1971); see also In re Hamilton, 212
Bankr. 384 (Bankr. M.D. Ala. 1997), applying Alabama law and
following Cotnam.

Respondent disagrees with the Court of Appeals for the Fifth
Circuit, and respondent continues to assert that, as we held in
Cotnam, notwithstanding the peculiarities of State law, under
contingency fee agreements attorneys do not acquire ownership of
those portions of funds recovered in lawsuits allocable to
attorney's fees, and the attorneys' clients are taxable on the
full amount of the funds recovered in spite of any lien the
attorneys may have thereon.

In this case, petitioner resided in Arizona when he filed
his petition herein. The parties, however, have not cited any
provision of Arizona statutory law, and we have found none, that
pertains to the legal rights of Arizona attorneys in monetary
awards recovered on behalf of their clients.

Decisions by Arizona courts have addressed this issue only
to a limited extent. In Skarecky & Horenstein, P.A. v. 3605 N.

36th St. Co., 825 P.2d 949, 951 (Ariz. Ct. App. 1991), it was held that under Arizona Rules of Professional Conduct attorneys are not permitted to acquire proprietary interests in funds recovered on behalf of their clients until after the judgments are rendered.  17A Ariz. Rev. Stat. Sup. Ct. Rules, 42 Prof. Conduct, ER 1.8(j)(1985); see also State Farm Mut. Ins. Co. v. St. Joseph's Hosp., 489 P.2d 837, 840-841 (Ariz. 1971), which held that Arizona attorneys have no right to attorneys' liens against funds recovered on behalf of their clients until after judgments are rendered or settlements are entered into.

It thus appears that, in Arizona, attorneys do not have the same substantive rights in funds recovered on behalf of their clients as do attorneys in Alabama.  In Arizona, the total funds recovered constitute property of the clients.  Based on the foregoing, this case is distinguishable from Cotnam v. Commissioner, supra, decided by the Court of Appeals for the Fifth Circuit.

In the Glass and Stephens class actions, the documentation is extensive to the effect that petitioner was entitled to and received an award of $862,906, one-third of which was then used to pay the $273,573 portion of the attorney's contingency fees for which petitioner was obligated.

Petitioners rely on Eirhart v. Libbey-Owens-Ford Co., 726 F. Supp. 700 (N.D. Ill. 1989), in which it was held that the defendant need not file information returns with respondent

reporting as taxable income the portion of funds awarded that was allocable to attorney's fees.  The court based its holding on a common fund theory that would appear to be applicable only to opt-out class actions in which, as of the time fees are awarded, not all members of a class have become identified or contractually obligated to compensate the attorneys who perform legal services for the members' benefit.  This may occur where members of a class are unknown until the conclusion of the lawsuit and in opt-out class actions.

In opt-out class actions, persons must affirmatively decline to be a member of the class or they are automatically members of the class.  In these opt-out class actions, there may be policy reasons to treat funds recovered and used to pay attorney's fees as nontaxable to the class members (namely, additional members of the class may later be identified and held responsible for a portion of the legal fees).

On the other hand, in opt-in class actions such as the <u>Glass</u> and <u>Stephens</u> class actions against IDS, members must affirmatively join the class to be considered class members.  The consequence of not specifically joining opt-in class action is that the person not joining the class is not entitled to share in the funds recovered by settlement or judgment.

Thus, in the opt-in class action lawsuits against IDS, when the class closed, all class plaintiffs were identified, and

current and former employees of IDS who did not join were notified that they were not entitled to share in any recovery.

Petitioner asserts that the attorney's fees were not awarded to him personally, but rather that they were awarded directly to Winthrop and Weinstine. Petitioner points to the fact that Winthrop and Weinstine was the sole payee on the $23,783,333 check that included the portion of the funds recovered allocable to attorney's fees, and petitioner argues that under ADEA an award of attorney's fees is authorized directly to the plaintiffs' attorneys.

We note that the $23,783,333 check included the $12,616,666 portion of the award allocated to tort damages awarded to the class action plaintiffs and that the total amount of this check was deposited into a trust account in favor of the class action plaintiffs. Presumably, if the class action plaintiffs had no interest in the portion of the funds allocable to attorney's fees, two checks would have been requested, and each check would have been deposited into separate accounts -- one for the class action plaintiffs in the amount of $12,616,666 representing the tort damages received and one for Winthrop and Weinstine in the amount of $11,166,666 representing the attorney's fees.

The relevant documentation in the Glass and Stephens class action lawsuits against IDS repeatedly acknowledges that attorney's fees would be owed by the class plaintiffs and that

amounts allocated and to be used to pay attorney's fees were to be awarded to the class plaintiffs, not to the attorneys.

Petitioners argue that because the class action lawsuits provided benefits to persons other than the class plaintiffs, the attorneys acted as private attorneys general.  We note that Winthrop and Weinstine never sought relief on behalf of unnamed plaintiffs.  Injunctive relief on behalf of all employees of IDS was sought by the EEOC.  Correspondence mailed by Winthrop and Weinstine to potential class members explained that employees of IDS not joining the class would not receive any damages.  It was EEOC, not Winthrop and Weinstine, that requested broader relief that would extend beyond the class plaintiffs.

In summary, the $252,608 portion of the total award received by petitioner from IDS in the class action lawsuits that is allocable to attorney's fees and that is in dispute herein is to be included in the taxable income of petitioner.

Decision will be entered

for respondent.