In re Borchers, Bankrupt.

[Cite as In re Borchers, 17 Ohio Misc. 146.]

(No. 38556—Decided December 20, 1968.)

United States District Court for the Southern District of Ohio, Eastern Division.

Kelleher, Referee. This cause came on for consideration, after due notice and hearing, upon a certain motion filed herein by counsel for the bankrupt on August 21, 1968. The hearing was held September 24, 1968, at which time the trustee and his attorney, Larry E. Staats, appeared in

opposition, and Robert P. DiRosario, attorney for the bankrupt, appeared in support of the motion. Attorney Philip R. Bradley also appeared. At said hearing, Mr. DiRosario requested and was granted leave to amend his motion orally which amended motion was reduced to writing and filed the next day, September 25, 1968, along with a memorandum in support. On October 8, 1968, the trustee's memorandum in opposition to the motion was filed by Mr. Staats. On October 25, 1968, Mr. DiRosario filed a reply memorandum and a second amended motion. The second amended motion is as follows:

"Now comes the bankrupt, Joseph T. Borchers, by his counsel and respectfully moves the court to instruct or order the trustee to abandon the personal injury claim in the first cause of action of the pending law suit in the Common Pleas Court of Franklin County, Ohio, being Case No. 228,612, to the bankrupt for the reason that such claim is not subject to the jurisdiction of the court and is the exclusive right of the bankrupt."

Counsel have presented the matter as a question of law only. There seems to be no dispute as to facts, and thus no findings of fact are needed. The issue of law, however, is important not only to this bankrupt, his creditors and the trustee in this case, but important as well to parties in numerous other bankruptcy proceedings presently pending on the docket of this court. In addition, I am informed that the same issue arises often to plague trustees in bankruptcy and attorneys representing bankrupts, not to mention other referees in bankruptcy, and has caused extreme delay in the administration of a substantial number of pending bankruptcy cases throughout Ohio. The delay reflected by the record in this case is typical when the issue presented here arises. Perhaps this case will serve, as counsel have suggested, as an appropriate vehicle to obtain from one or more upper courts definitive rulings which will serve as guidelines in pending and future bankruptcy proceedings in Ohio involving the same issue. Therefore, it is deemed appropriate to set forth a recital of background in somewhat greater detail than would ordi-

narily be necessary when factual background is not in dispute.

On or about June 10, 1965, Joseph T. Borchers while operating a 1965 Honda motorcycle was involved in a collision with a vehicle operated by one Frederick Royalty, suffering as a result bodily injuries, medical expense, loss of earnings and damage to his motorcycle. Thereafter, he retained attorney Philip R. Bradley to represent him in the matter. On August 30, 1965, Joseph Borchers and his wife, Claudietta, filed voluntary petitions in bankruptcy. Attorney Robert P. DiRosario is counsel of record and represents the Borchers in the bankruptcy proceedings. Mr. DiRosario and Mr. Bradley are associated in the practice of law under the name Bradley, Farris and DiRosario. In the schedules attached to Joseph Borchers' petition there appears the following:

"Schedule B-3

Choses in Action

| c.—Unliquidated claims of every nature, with the estimated value. | Possible claim for property damage as a result of collission (sic) between Honda motorcycle driven by petitioner and automobile driven by Frederick Royalty on June 10, 1965. No estimated value at this time." |
|---|---|

The schedules did not disclose any unliquidated claims for bodily injury, medical expense or loss of earnings. However, at the first meeting of creditors held on September 14, 1965, the bankrupt, in response to questioning by the referee, disclosed such additional claims. It was also disclosed at that time that Mr. Bradley was actively engaged in representing Mr. Borchers on these claims, that offers of settlement had been made and rejected by Mr. Bradley, and that settlement negotiations were continuing. Only two creditors appeared at the first meeting, both being secured creditors. Creditors failed to elect a trustee at that time as might have been done under Section 44 of the

Bankruptcy Act. The court reserved ruling upon the question of the appointment of a trustee.

After further investigation and consideration, it was determined that the best interests of creditors and of the estate required the appointment of a trustee. On October 15, 1965, Robert E. Sexton was appointed trustee, and on the same date he qualified as such by posting bond in the amount of $2,000.00 duly approved by order of the court. On October 25, 1965, Mr. Sexton filed his application seeking authority to employ as his attorney, Larry E. Staats, which application was granted, effective October 29, 1965.

On November 29, 1965, the trustee filed an Interim Report in which he stated that he had been "* * * informed by attorneys for the bankrupts that an application or applications to dismiss these bankruptcies without prejudice may be filed within the near future." No such motion was presented, and the trustee proceeded with routine matters of administration. On February 21, 1966, the trustee filed his application seeking authority to employ as his special counsel Philip R. Bradley to prosecute the claims growing out of the motorcycle accident of June 10, 1965. On the same date an Order Appointing Special Counsel was entered. On April 19, 1966, a motion, without memorandum and giving no reasons, was filed by Mr. DiRosario on behalf of Joseph Borchers seeking dismissal of his bankruptcy proceeding without prejudice. No similar motion was filed on behalf of Mrs. Borchers. No hearing was requested upon the motion, and the same was later withdrawn by an order entered on February 1, 1967, approved by Mr. DiRosario and based upon his oral motion that the same be withdrawn.

On August 12, 1966, the trustee applied for and was granted authority to file suit in the Common Pleas Court of Franklin County, Ohio, upon the claims growing out of the motorcycle accident. Pursuant thereto a petition was prepared, signed "Philip R. Bradley, Attorney for Plaintiff," and filed in the Common Pleas Court of Franklin County, Ohio, on November 5, 1966. The case is No. 228,612 on the docket of that court and is styled "Joseph T.

Borchers by Robert E. Sexton, Trustee, vs. Frederick Royalty.'' The petition (a copy is attached to the trustee's memorandum filed October 8, 1968) sets forth two causes of action. The first cause of action sets forth bodily injury, medical expenses of $859.89 and loss of earnings of $540.46. The second cause of action pleads property damage to the 1965 Honda motorcycle in the amount of $265.35. The prayer of the petition is for judgment of $26,500.00.

On March 16, 1967, the trustee filed an Interim Report with the court, disclosing that he had liquidated assets and collected funds resulting in proceeds to that date of $369.20 and $52.50 respectively in the estates of Joseph and Claudietta Borchers. Other than the disposition of some tangible assets of minimal value, there appeared to be nothing preventing the termination of administration of the estates except the pending action in Common Pleas Court.

On November 3, 1967, the trustee filed an Interim Report, disclosing that Mr. Bradley had received an offer of compromise of the pending tort action for $2,500.00, that Mr. Bradley believed the claims to have greater value, but that the trustee believed ''* * * that a meeting of creditors should be called to consider said offer of settlement.'' Such meeting of creditors was called for November 28, 1967, upon due notice to all creditors and other interested parties. Mr. Staats appeared for the trustee. Mr. DiRosario appeared for the bankrupt and stated that he was also there in behalf of special counsel, Philip Bradley. The undersigned did not preside at said meeting of creditors, being then absent because of illness. The appearances are reflected in an order which was entered by Referee Dilenschneider on January 4, 1968, journalizing his orders orally made at the meeting of creditors. That order authorized the trustee ''* * * to continue to negotiate said claim with the representatives of the defendant in said pending civil action. And * * * to reject, at this time, the offered settlement or compromise for the sum of $2,500.00.''

In the trustee's Interim Report filed May 15, 1968, it was reported that the civil action was still pending, await-

ing assignment for pre-trial conference. Apparently the pendency of the case was the only matter undetermined and preventing final termination of administration of the bankruptcy estates.

On August 21, 1968, Mr. DiRosario filed the motion now under consideration, formally asserting for the first time that the trustee has no interest in the claims upon which the pending civil action is based. At or about the same time apparently, Mr. Bradley filed a motion in the Common Pleas Court action to terminate the trustee's interest in the action or to delete the trustee as party plaintiff and to substitute Joseph Borchers as plaintiff. He signed such motion as "Attorney for Plaintiff," the plaintiff being the trustee, but he neither conferred with nor advised his client, the trustee, of his intention to file such a motion. He presented a journal entry to a judge of the Common Pleas Court and upon Mr. Bradley's representations, the motion was granted. Mr. Staats, general counsel for the trustee, soon thereafter discovered the changed status of the pleadings in the civil action, conferred with the trustee and promptly took action to restore the trustee as plaintiff. The trustee by letter dated August 22, 1968, advised Mr. Bradley that his representation of the trustee was terminated immediately.

On September 3, 1968, the trustee filed a report and application to compromise the pending civil action for $2,600.00 with a prayer that a meeting of creditors be called, that an order to show cause be issued requiring the bankrupts and Philip R. Bradley to appear and show cause why the trustee should not be authorized to compromise as requested, and for an order approving the compromise and directing the bankrupts to execute releases. The meeting of creditors was called for September 24, 1968, and due notice thereof given; the show cause order requested was issued and the bankrupts and Philip R. Bradley were directed to appear on the same date; and notice of hearing was also issued of a hearing to be held on the same date upon Mr. DiRosario's motion of August 21, 1968, the motion now under consideration.

At said hearing the trustee supported his application

to compromise by stating the results of his investigation and his belief that the amount of $2,600.00 was a fair and reasonable settlement in view of the uncertainties of litigation, the damages allegedly sustained, and the facts surrounding the collision. There was no objection from creditors. Mr. DiRosario, on behalf of the bankrupt, opposed the proposed settlement not only as to amount but because of the legal position taken in his motion to the effect that the bankrupt owns the claims and that he only, not the trustee, has the right to litigate and/or settle the claims. Therefore, the court determined that further consideration of the proposed compromise should be held in abeyance pending determination of Mr. DiRosario's motion. Counsel for the parties were heard briefly on the legal issue and granted leave to file written memoranda which were filed as stated hereinabove.

The primary question before the court is this: Is a trustee in bankruptcy vested by operation of law with the title of the bankrupt, as of the date of the filing of the bankruptcy petition, in a right of action for injury to the person of the bankrupt?

Section 70a.(5) of the Bankruptcy Act sets forth the criteria by which the answer must be determined. However, the statute is a "now you see it, now you don't," verbalized "shell game." The first portion of the subsection using this language: "property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered" would seem to indicate the possibility of either an affirmative or negative answer depending upon applicable state law as to transferability or leviability. The second portion of the subsection reading: "*Provided*, That rights of action *ex delicto* for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death * * * shall not vest in the trustee" would seem to indicate a definite negative answer to the question regardless of state law. If Congress had stopped with this lan-

guage there would be no problem. We would have a rule of standard application throughout the country that personal injury claims do not pass to a trustee. But, additional language was inserted in the subsection which is: "unless by the law of the state such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process." This additional language leaves no question but that the answer must be determined under applicable state law and may vary from state to state. Therefore, if in a particular state a right of action for injury to the person of a bankrupt is subject to attachment, execution, garnishment, sequestration, or other judicial process, then such right of action is a species of property declared by Section 70 of the Act to vest in a trustee appointed by a bankruptcy court sitting in that state. On the other hand, if such right of action is not subject to any of such processes, then it does not vest in the trustee. This court is then controlled by Ohio law.

Unfortunately, the most recent Ohio case purporting to deal with this problem leaves much to be desired as a solution. Nonetheless, it is being frequently cited and bears close examination. I refer to *Haines* v. *Public Finance Corp.*, 7 Ohio App. 2d 89, decided July 27, 1966, by the Ohio Court of Appeals for Summit County, Ohio. First, it must be noted that the issue was raised, not by a trustee in bankruptcy, but by the defendant finance company. For this reason, it follows that the decision may probably not even be taken as binding upon a trustee in bankruptcy for Haines, let alone upon all trustees in bankruptcy for other Ohio bankrupts. Second, it should be noted that the so-called personal injury involved was an action for invasion of privacy which may in and of itself be sufficient to distinguish that case from the present one. Third, and most important, it must be observed that apparently counsel for the finance company did not urge nor did the court mention or give any consideration to any Ohio creditor remedy other than attachment or garnishment as criteria to determine if the asserted right of action had vested in a trustee in bankruptcy for Haines. The

language of Section 70a.(5) of the Bankruptcy Act upon which the court rested its decision was not only quoted, but emphasis was supplied. But, notwithstanding the emphasis and having determined that the right of action in question was not subject to either *attachment* or *garnishment* under Ohio law, the court, without further statement regarding *execution, sequestration,* or *other judicial process* (also set forth in Section 70a.[5] of the Act) proceeded to its abrupt conclusion that the right of action had not vested in Haines' trustee.

There would seem to be little question that in Ohio neither attachment nor garnishment will reach a right of action for personal injury. No suggestion has been here made, that such a claim, can be reached by execution or sequestration, when considered in their usual sense. However, it is strongly urged by the trustee that Ohio provides "other judicial process" by which a creditor may reach such a claim or right in action, *i. e.,* judicial process in the nature of a creditor's bill pursuant to Section 2333.01, Revised Code.

The general nature, usage and effect of a creditor's bill in Ohio law is discussed at length in an excellent article by Dean Charles W. Fornoff. 16 Ohio State Law Journal 48, 55. However, the article does not treat upon the effect of the remedy in relation to Section 70 of the Bankruptcy Act. Bearing directly upon this problem, is an equally excellent article by Gerald H. Rubin. 18 Western Reserve Law Review 1025. Mr. Rubin points out the failure of the court in Haines to consider at all the creditor's bill, Section 2333.01, Revised Code, or the decisions in *Cincinnati* v. *Hafer,* 49 Ohio St. 60 and *Strouss-Hirshberg Co.* v. *Davidson,* 19 Ohio Law Abs. 225.

It would seem that the court in *Haines* might well have arrived at the opposite result if it had considered these cases along with Section 2333.01, Revised Code. But I need not speculate further about the *Haines case.* It is clear that the Court of Appeals of Mahoning County in *Strouss-Hirshberg, supra,* has specifically held that a creditor's bill is an available Ohio judicial process which will

enable a creditor to reach an unliquidated right of action for personal injuries. Counsel for the bankrupt has attempted to discredit the *Strouss-Hirshberg* decision by this statement in his brief: "Since the Court of Appeals of Mahoning County disregarded the syllabi of the *Cincinnati* v. *Hafer case* * * * and relied upon *obiter dictum*, we must discount this case as not being supported by the highest law of the state of Ohio." Such reasoning suggests that lower courts of Ohio can never decide a case until the precise facts and law before it have been first presented to the Supreme Court of Ohio. It is true that *if* in *Cincinnati* v. *Hafer* a finding was made that a claim for damages for injury to person was subject to a creditor's bill, such finding was *obiter dictum*. Even if such a principle had been included in the syllabi of the case, it would still have been *obiter* only. Obviously, the facts of a case determine what legal principles are necessary to a decision by a court. Other principles, no matter how announced, are *obiter dictum*. In *Hafer*, an injury to real estate was involved, not an injury to person. To the contrary *Strouss-Hirshberg* involved injury to the person. Consequently, the principle pronounced by the Court of Appeals in that case is certainly not *obiter*. It is the rule of the case.

Counsel have devoted much briefing effort to the question of what constitutes the "rule of the case" in the Ohio Supreme Court and in the Ohio Appellate Courts. Both seem to agree that the "rule of the case" in the Ohio Supreme Court must be found in the syllabi of a given case, unless a decision is *per curiam*. Both recognize that the "rule of the case" in Ohio Appellate Courts is found in the opinion of a given case, just as it is in every other court of record known to American Jurisprudence, so far as I can find. After diligent search, one can rarely find an Ohio Supreme Court decision with a syllabus stating that only the syllabi contain the "rule of a case" in the Supreme Court. For example, counsel for the bankrupt cites two cases on page 3 of his reply memorandum from which he quotes language to the effect that the Ohio Supreme Court announces law only through the syllabi of

cases or through *per curiam* decision. *Ohio* v. *Hauser*, 101 Ohio St. 404; and *Thackery* v. *Helfred*, 123 Ohio St. 334. Both opinions were written by Judge James E. Robinson, one in 1920 and the other in 1931; neither was a *per curiam* decision, and neither has a syllabus announcing the principle. One might conclude then that the principle was only *obiter*, and only Judge Robinson's personal opinion. In any event, counsel for the bankrupt finds himself quoting from two Supreme Court opinions, while at the same time trying to convince this court that opinions in the Ohio Supreme Court are next to worthless as a guide to inferior Ohio courts and to the Ohio Bar. Even though the syllabi seem to enjoy a sanctity in Ohio Supreme Court decisions, not enjoyed anywhere else, it does not follow that the language of the opinions has no meaning or purpose when not syllabized. As pointed out by the Ohio Supreme Court in 1954, wherein Judge Hart wrote the opinion: "By rule of this court, the syllabus of a case constitutes a statement of the points of agreement of all the judges concurring in the opinion as distinguished from other statements made in the course of the opinion, but the rule does not substitute the syllabus for the court's order or judgment, from which must be determined the issues decided by the court." *Burton* v. *Durkee*, 162 Ohio St. 433 (syllabus No. 1). As even Judge Robinson pointed out in *Hauser, supra*: "* * * insofar as an opinion applies the law to the facts of the case, and states the process of reasoning by which the court arrived at its judgment and its declaration of the law in the syllabus, it undoubtedly serves a useful purpose." The Ohio Court of Appeals in *Strouss-Hirshberg* used the opinion of the Ohio Supreme Court in *Hafer* in just that way, in my opinion. First the syllabus of *Hafer* was quoted and then the opinion was quoted, in part, to point up the process of reasoning by which the Supreme Court arrived at its syllabic judgment. Close examination of the process of reasoning in *Hafer* discloses only one real basis upon which it was determined that an injury to real estate was a chose in action subject to an action in the nature of a creditor's bill. Judge Dickman

who wrote the opinion adopted as the proper definition of a "chose in action" the following from Judge Sharswood in 2 Blackstone's Commentaries 396: "There is a very large class of choses in action, which arise *ex delicto*. My claim for compensation for any injury done to my person, reputation or property, is as truly a chose in action, as where it is grounded on a breach of covenant or contract." In considering the impact of Section 5464, Revised Statutes (now Section 2333.01, Revised Code), on the facts before the Supreme Court, Judge Dickman explained his process of reasoning relating to the words "claim due or to become due" used in the statute, with the following: "The term 'claim' is comprehensive, and would embrace a demand for money in varied forms, whether on contract, express or implied, or for damages growing out of injury to person or property. Damages have been defined as a sum of money adjudged to be paid by one person to another as compensation for a loss sustained by the latter in consequence of an injury committed by the former (citation omitted). If the claim for unliquidated damages is converted into a judgment while the creditor's bill is pending, it may be regarded as a claim, which at the time of the filing of the creditor's bill to subject it in equity, was a claim 'to become due,' within the meaning of the statute; and the judgment debtor's interest in the same might be reached by his judgment creditor." The process of reasoning is clear; *i. e.*, both injury to person and injury to property are included within the terms "chose in action" and "claim" as used in Section 5464, Revised Statutes (and in Section 11760, General Code, and Section 2333.01, Revised Code, which came later). To deny that injury to person is included within the terms, is to deny the definition adopted in the process of reasoning by which the Supreme Court of Ohio arrived at its syllabic judgment that injury to property is a "chose in action" and a "claim" subject to a creditor's bill in equity. Surely, this cannot be done.

Even if one accepts the argument of counsel for the bankrupt that only the syllabi in *Hafer* can be looked to for

determination of the "rule of the case," then we have before us a situation in which the highest court of Ohio has not ruled. This court then looks to Ohio courts of appeal for the Ohio law. We find *Strouss-Hirshberg* and *Haines, supra,* both already mentioned. In addition counsel have cited another court of appeals case as bearing upon the problem: *Alms & Doepke Company* v. *Johnson,* 98 Ohio App. 78. This case presents a somewhat complex situation in which a judgment creditor instituted an action pursuant to Section 2333.01, Revised Code. While the action was pending against the judgment debtor, she instituted action against her tort-feasor, one Lester Bright. Bright was insured by Ohio Farmers Indemnity Co., and both had notice of the pending creditor's bill, each having been named as a party and served with a summons. Notwithstanding such notice and summons, and the pendency of the creditor's bill, a settlement of the tort action was negotiated and paid without making provision for the satisfaction of the judgment of the plaintiff in the creditor's bill. The plaintiff contended then that such payment was made at the insurer's peril and that plaintiff should recover against it for the full amount of its judgment upon which the creditor's bill was based. The trial court agreed, its primary authority being *Cincinnati* v. *Hafer.* The Court of Appeals of Hamilton County reversed. Careful consideration of the trial court and appellate decisions points up one glaring distinction between the facts in *Alms & Doepke* and in *Hafer.* The city of Cincinnati was the tort-feasor, named as defendant in the creditor's bill brought by Hafer. In *Alms & Doepke,* Lester Bright, the insured was the tort-feasor, not Ohio Farmers Indemnity Co. The Court of Appeals examined the case as of the time of the commencement of the creditor's bill and as if the settlement had not been reached and money paid on behalf of the tort-feasor. It found in effect that no cause of action, chose in action or claim existed against Ohio Farmers Indemnity Co. *at that time* which could be reached by the creditor's bill. It did not find that the creditor's bill was improperly brought against Lester Bright, the

tort-feasor, nor did it suggest that the trial court could not have entered judgment against Lester Bright who caused or permitted payment of the tort claim against him, during the pendency of the creditor's bill without making provision for satisfaction of the judgment of *Alms & Doepke Co.* Had it done the latter, it would have come into direct conflict with *Cincinnati* v. *Hafer*, for in that case it was the tort-feasor, the city of Cincinnati, which disregarded the creditor's bill and was required by the Supreme Court to satisfy the judgment of Hafer brought to its attention by Hafer's creditor's bill. Consequently, I find no conflict between *Alms & Doepke* and *Hafer*. If there were, I would, of course, have to follow *Hafer*. However, *Alms & Doepke* does present a disturbing situation, since it apparently holds that an insurer is not properly joined in a creditor's bill which is brought for the primary purpose of subjecting a claim against its insured to the satisfaction of a judgment upon which the creditor's bill is based. To this extent *Alms & Doepke* may be in conflict with *Strouss-Hirshberg* in which both the insured and his insurer, Century Indemnity Co., were named as defendants in that creditor's bill. In any event, the result of *Alms & Doepke* seems to be that a liability insurer can ignore with impunity the process of a court of equity whose jurisdiction has been invoked pursuant to the legislative grant contained in Section 2333.01, Revised Code. This case seems to make of the statute a rather hollow remedy, and of the court in which the creditor's bill is lodged, a rather ineffective forum, if the tort-feasor is relieved of any responsibility to the plaintiff in the creditor's bill. It would seem to have been far better to have upheld the trial court as permitting a court of equity to do complete equity in the situation. The trial court's opinion presents a much more practical and equitable result in this day of wide-spread liability insurance coverage. It seems to recognize that the tort-feasor, Bright, who was bound by the thrust of the creditor's bill, was not in control of his own case and was probably represented only by counsel selected by and representing primarily the insur-

ance carrier. As between the two, the insured and the insurer, if one must respond to the creditor's bill plaintiff in satisfaction of the judgment not provided for in the settlement of the tort claim, surely it ought to be the insurer whose agents and attorneys negotiated and paid the settlement supposedly on behalf of the insured. However, *Alms & Doepke* does not control the instant case.

It is clear that Ohio does provide a judicial process by which a creditor may reach a chose in action or a claim due or to become due to his debtor. Section 2333.01, Revised Code, creates an action in favor of such a creditor and *Cincinnati* v. *Hafer* and *Strouss-Hirshberg* v. *Davidson* establish that a tort claim based on personal injury is such a chose in action and claim as to be within the meaning of the statute. Insofar as *Haines* v. *Public Finance* and *Alms & Doepke Co.* v. *Johnson et al, supra,* are or may appear to be in conflict with *Hafer* and *Strouss-Hirshberg,* they are not the law of Ohio, and I decline to consider them further.

Returning now to the criteria set forth in Section 70a.(5) of the Bankruptcy Act, it is clear that Ohio does have a judicial process to which rights of action *ex delicto* for injuries to the person are subject. Therefore, such rights of action do pass to a trustee in bankruptcy appointed in Ohio for a bankrupt who has such a right of action at the date the bankruptcy commences.

It may be noted that in most states rights of action for personal injury are not subject to creditor process and therefore do not pass to trustees in bankruptcy in those states. For an apparently well-written opinion reflecting such result based on Wisconsin law see *Hayes* v. *Buda,* 323 F. 2d 748, decided by the U. S. Court of Appeals for the Seventh Circuit in 1963. For an equally well-written opinion reflecting the contrary result based on California law see *Carmona* v. *Robinson,* 336 F. 2d 518, decided by the U. S. Court of Appeals for the Ninth Circuit in 1964.

All other contentions of counsel have been carefully considered, and cited authorities examined. None of such change the result already indicated, and therefore, comment

upon such additional contentions and authorities will be withheld.

It should be noted that the motion under consideration as originally filed by Mr. DiRosario on behalf of the bankrupt, sought an order of this court directing the trustee to disclaim or abandon all interest in the tort action. By amendments to the motion and as stated in his Reply Memorandum, he later conceded that the second cause of action pleaded in the tort case, being based upon property damage, did pass to the trustee. Of course, such result is compelled by Section 70a.(6) of the Bankruptcy Act which so provides, and which does not refer to state law on the subject. In every bankruptcy case then, no matter in which state filed, rights of action for injury to a bankrupt's property pass to his trustee in bankruptcy. Consequently, by virtue of this statute it is clear that the trustee in this case is the proper party plaintiff in case No. 228,612 of the Common Pleas Court of Franklin County, as to the second cause of action based on property damage. By virtue of Ohio law so found herein he is also the proper party plaintiff as to the first cause of action.

Section 11c. of the Bankruptcy Act empowers a Trustee "* * * to prosecute * * * any suit commenced by the bankrupt prior to his adjudication, with like force and effect as though it had been commenced by him." Section 11e. empowers a trustee, within certain time limitations, "* * * to institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy." As recital of the facts heretofore reflects, no suit by the bankrupt was pending at the date of this bankruptcy, and the trustee, therefore, instituted the proceeding with approval of this court in accordance with Section 11e. of the Act. The approval of this court was granted by an order entered on August 31, 1966, more than six (6) months after the trustee had employed Mr. Bradley, of Bradley, Farris and DiRosario, as special counsel for the single purpose of prosecuting the

tort claim for the benefit of this estate. The proceeding was thereafter actually instituted on November 5, 1966, by a petition properly filed and signed by Mr. Bradley as ''Attorney for Plaintiff.'' A year later a hearing was held before Referee Dilenschneider to consider a settlement proposal which was not approved. It was not until August 21, 1968, that the main issue discussed herein was formally raised for the first time. Were it not for the importance of the main issue to other bankrupts and to the administration of bankruptcy cases generally in Ohio, this court might well have determined that the bankrupt and his counsel should be barred by the extreme delay in raising the issue, and by the failure to seek reconsideration or file a petition for review within ten (10) days after entry of either the order authorizing commencement of the suit (entered on August 31, 1966), or the order rejecting the proposed compromise and authorizing the trustee to continue litigating the matter (entered January 4, 1968). In any event, the trustee has not asked for a decision on that basis, and the court has felt compelled to meet the main issue directly.

Based upon all the foregoing, it is concluded that the Second Amended Motion filed on behalf of the Bankrupt on October 25, 1968, is not well taken and that the same should be and it hereby is DENIED.