**In the Matter of Raymond Cecil SCHMELZER, Bankrupt.**

**No. 55383.**

United States District Court,
S. D. Ohio, E. D.

Sept. 21, 1972.

E. Bruce Hadden, Jarrell Murchison, Campbell & Hadden, Columbus, Ohio, for bankrupt.

Larry E. Staats, Columbus, Ohio, for the Trustee.

## ORDER

CARL B. RUBIN, District Judge.

### I

This matter is before the Court on a petition for review from an order of the Referee in Bankruptcy denying the bankrupt's application that an unliquidated cause of action for personal injury in tort be deemed exempt property within the meaning of Section 70a(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5). The Referee, following In re Borchers, 17 Ohio Misc. 146, 46 Ohio O.2d 217 (1968) (per Referee Kelleher), aff'd., October 23, 1970 (S.D.Ohio, E.D.), denied the application and held that the cause of action was "property" within the meaning of the Bankruptcy Act which passed to a trustee in bankruptcy.

The facts of this case are quite straightforward and are well presented in the detailed opinion of the Referee denying the objections of the bankrupt. Briefly summarized, they are as follows: On December 13, 1968, Raymond Cecil Schmelzer, the bankrupt herein, was involved in an automobile accident in which he sustained serious injuries. He filed suit[1] against the other drivers involved in the collision on October 27, 1969, praying for damages of Seventy-five Thousand ($75,000.00) Dollars for property damage, medical expenses, loss of earnings, and pain and suffering. This personal injury suit was pending when Schmelzer filed his petition for bankruptcy herein on June 23, 1971. On Schedule B–5 of his petition in bankruptcy, he claimed exempt status for his personal injury claim. This exemption was contested by the trustee in his report of exempt property. The bankrupt's objection to this report was overruled by the Referee in his order of November 29, 1971, and this review was subsequently perfected from that order.

Section 70(a)(5) of the Bankruptcy Act states in pertinent part as follows:

§ 70. Title to Property (a) The trustee of the estate of a bankrupt . . . upon his . . . appointment and qualification, shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered: *Provided, That rights of action ex delicto for . . . injuries to the person of the bankrupt . . . shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process* . . . (emphasis added)

It will be noticed that there are several distinct aspects to this provision. Subsection 5 of Section 70(a) provides that in general, causes of action which are transferable or which can be levied upon and sold under judicial process, are property which pass to the trustee in bankruptcy. The first clause of the proviso, which was added to this section as an amendment in 1938, specifically excludes from this general rule ex delicto actions, including actions in tort for personal injury, from vesting in the trustee. This clause, however, is modified by the second clause of the proviso which allows the general rule of Subsection 5 to apply to those actions, which under state law, are subject to attach-

1. Raymond C. Schmelzer v. Gwendolyn Ann Farrar, et al., Case No. 238384, Common Pleas Court, Franklin County, Ohio.

ment, execution, garnishment, sequestration or "other judicial process."

We agree with the Referee who, in *In re Borchers, supra,* characterized this statutory provision as a "verbalized shell game" of "now you see it, now you don't." 46 Ohio O.2d at 221. We also, however, agree with the interpretation of these provisions as found in McNeilly v. Furman, 8 Terry 565, 47 Del. 565, 95 A.2d 267, 35 A.L.R.2d 1436 (1953) where the Court stated:

> . . . in respect of all rights of action except those enumerated in the proviso, either assignability or liability to seizure by judicial process is the general test of the trustee's title; the specific actions named in the proviso, however, do not pass to the trustee unless subject to seizure by judicial process.

95 A.2d at 268, 35 A.L.R.2d at 1439. We therefore conclude that this present appeal is governed solely by the language of the second clause of the proviso to Section 70(a)(5); Ohio law is therefore controlling. See 4A Collier, Bankruptcy, ¶ 70.28(3) (14th ed. 1971).

Since the parties are in agreement that an unliquidated personal injury claim is not subject, under Ohio law, to attachment, garnishment or sequestration, the only question before this Court is whether, in Ohio, such an action is subject to seizure by "other judicial process" and especially by a creditor's bill.[2] The Ohio authorities are divided on this question. Compare In re Borchers, *supra,* Strouss-Hirshberg Co. v. Davidson, 19 O.Law Abs. 225 (Ct.App. Mahoning Cty.1935) and Rubin, Note, Bankruptcy—Rights of Trustee—unliquidated cause of action for personal injury, 18 West Res.L.R. 1025 (1967), which indicate an affirmative answer to this question, with Alms & Doepke Company v. Johnson, 98 Ohio App. 78, 128 N.E.2d 250, 57 Ohio O. 177 (Ct.App. Hamilton Cty.1954) and Haines v. Public Finance Corp., 7 Ohio App.2d 89, 218 N.E.2d 727, 36 Ohio O.2d 198 (Ct.App. Summit Cty.1966), which would suggest a negative one. Because of the indefinite state of Ohio law in this area, we will review the applicable cases in light of evolving concepts of property within the meaning of Section 70 of the Bankruptcy Act.

■ Our analysis of this question must begin with reference to the assignability of personal injury torts as Ohio law, in this area, developed along the lines of this rubric. It has been the law in Ohio from a very early date that personal torts, in the absence of a statute allowing the survival of these claims, are not capable of assignment. See Grant, v. Ludlow's Adm'r, 8 Ohio St. 1, 38 (1857).[3] The Ohio survival statute in existence at the time *Grant* was decided did not extend to cases in tort ex delicto. The *Grant* court, therefore concluded in a presumptive manner, and without extended analysis, that unliquidated and unvested personal torts were not assignable. The creation of a cause of action for wrongful death was not deemed sufficient to alter the applicability of this

---

2. § 2333.01 O.R.C. provides as follows:
*Equitable and certain other assets.*
When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, *any equitable interest which he has in real estate as mortgagor,* mortgagee, or otherwise, or any interest he has in a banking, turnpike, bridge, or other joint-stock company, *or in a money contract, claim, or chose in action, due or to become due to him,* or in a judgment or order or money, goods, or effects which he has in the possession of any person or body politic or corporate, shall be subject to the payment of the judgment by action. (emphasis supplied)

3. The traditional reason given in support of this rule and the one recognized and adopted in *Grant, supra,* was:
> In general, it may be affirmed that mere personal torts, which die with the party, and do not survive to his personal representatives, are not capable of passing by assignment, and that vested rights, *ad rem* and *in re,* possibilities coupled with an interest, and claims growing out of and adhering to property, may pass by assignment.

*Id.* at 38.

general rule. See Village of Cardington v. Adm'r of Fredericks, 46 Ohio St. 442, 448–449, 21 N.E. 766 (1889).

At the time Cincinnati v. Hafer, 49 Ohio St. 60, 30 N.E. 197 (1892) was decided, the Ohio survival statute had not yet been broadened to include causes of action involving injury to person. The statutes then in effect, however, did provide that a cause of action to the real or personal property of a decedent did survive to his estate. See, id., at 66, 30 N. E. 197. In Cincinnati v. Hafer, the facts were as follows: A Mrs. Teetor had a claim against the defendant city for damage to her property caused by the city's drainage system. She was also a judgment debtor to one Hafer. Hafer filed a creditor's bill seeking to acquire a lien on an amount, which if recovered by Mrs. Teetor in her suit against the city, would be sufficient to satisfy her indebtedness to him. Mrs. Teetor ultimately won her suit against Cincinnati. The city, which was unaware of Hafer's pending bill against Teetor because court records had been destroyed by a fire in 1884, paid Mrs. Teetor on her judgment. Hafer then sued the city for monies which it should have withheld because of his pending creditor's bill.

The Supreme Court of Ohio posed the question before it as "whether Mrs. Teetor's demand against the city for unliquidated damages was of such a nature that, before it was reduced to judgment, Hafer, a judgment creditor, could, by a suit in the nature of a creditors' bill against her and the city of Cincinnati, acquire a lien in equity on her interest in such demand, and become entitled to

payment of the same, in the event of succeeding in his suit." Id., at 64–65, 30 N.E. at 198. The Court, relying on Grant v. Ludlow's Adm'r, supra, and Village of Cardington v. Adm'r of Fredericks, supra, was of the opinion that a creditor's bill could be employed in this fashion and held:

> Mere personal torts die with the party, and are not assignable, but where the action is brought for damage to the estate, and not for injury to the person, personal feelings, or character, and the right of action survives to the personal representative, it may be assigned so as to pass an interest to the assignee . . .

> Choses in action arising out of a tort or injury to property being transmissible as assets to the executor or administrator, and assignable by the owner, it may well be inquired why the interest which the owner has in such rights of action should not be subjected to the payment of his debts at the suit of a judgment creditor, as well as his interest in any other chose in action.

Id., at 66, 30 N.E., at 198–199. Mrs. Teetor's unliquidated claim for damages based upon tort to property was therefore made subject to Hafer's creditor's bill.

There is a strong suggestion in Hafer, as dicta, that an action by way of a creditor's bill would have been a proper procedure against a claim for personal injuries which had "become due" within the meaning of the creditor's bill statute. Id., 49 Ohio St. at 67, 30 N.E. at 199.[4] However, since this concept was

4. "When Hafer began the present suit Mrs. Teetor's cause of action existed, and she had already commenced her action against the city; and when her demand for damages was reduced to judgment in October, 1886, his creditors' bill was still pending in the same court. When, therefore, judgment was rendered in his favor in July, 1887, the damages claimed by Mrs. Teetor from the city had been liquidated, and 'become due;' thus indicating that, when Hafer filed his creditors' bill, her demand against the city

was a chose in action that was 'to become due' or payable, or proper to be paid.

"But the statute not only subjects the judgment debtor's interest in any chose in action, but also any interest he has in 'any claim due or to become due.' The term 'claim' is comprehensive, and would embrace a demand for money in varied forms, whether on contract, express or implied, or for damages growing out of injury to person or property."

See id., at 67–68, 30 N.E. at 199; also see n. 2, supra.

expressly rooted in the holding of *Grant, supra,* it is fair to conclude that the creditor's bill could only extend against a personal injury claim that had become liquidated or that had vested. See, Grant v. Ludlow's Adm'r, *supra,* 8 Ohio St. at 38; Cincinnati v. Hafer, *supra,* 49 Ohio St. at 68, 30 N.E. 197. Also see n. 3, *supra.*[5] The actual holding in *Hafer* dealt only with the right of a judgment creditor, under the creditor's bill statute to proceed against an unliquidated cause of action arising out of tort to property.[6]

Ohio law was not extended beyond this point until Strouss-Hirshberg Co. v. Davidson, *supra.* In that case Davidson, who was a judgment debtor to Strouss-Hirshberg, had a cause of action in personal injury pending against one Oles. Strouss-Hirshberg filed a petition under the predecessor of what is now Section 2333.01 O.R.C. praying that in the event Davidson recovered against Oles, that recovery should be subject to the judgment the company previously had recovered in Common Pleas Court. Davidson's demurrer to the petition was sus-

tained and on appeal the Court of Appeals reversed. The sole question before the Court was whether an unliquidated claim for tort was a chose in action within the meaning of the creditor's bill statute. The Court of Appeals held that it was, purportedly relying on the decision of the Supreme Court in *Hafer, supra.*

Although the *Strouss-Hirshberg* court quoted extensively from *Hafer* in so extending Ohio law, it made no attempt to explain the substantial deviation it was in fact taking from the opinion in that case. As we have noted above, *Hafer* held only that a judgment creditor's right extends against unliquidated causes of action for torts against *property.* *Hafer* further indicated that such an action against a claim arising from tort to person would lie only after that claim was liquidated or had "become due." These crucial distinctions were not elucidated in *Strouss-Hirshberg.* See *id.,* 19 O.Law Abs. at 227.

The decision in *Strouss-Hirshberg* rests, for the most part, on a single passage from *Hafer,*[7] which was, in our

5. Since the time that Hafer was decided in 1892, the General Assembly of Ohio has amended both the creditor's bill statute, *supra* at n. 2, and the survival statute.

  Section 2305.21 O.R.C., the Ohio Survival Statute, now provides as follows:

  *Survival of actions.*

  In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

6. The holdings of Ohio cases are contained in the syllabi which are prepared by the deciding court. Paragraph 1 of the syllabus to Cincinnati v. Hafer provides that:

  Where a judgment debtor has commenced an action against another, for unliquidated damages arising out of an injury to his real estate, and the judgment creditor of such debtor thereafter, and while his judgment is alive, commences a suit, under section 5464 of the Revised Statutes, in the nature of

a creditors' bill, against such debtor and the wrong-doer, to subject to the payment of his judgment the debtor's interest in the chose in action or claim for damages, the judgment creditor may acquire a lien in equity upon such interest of the debtor, from the commencement of his suit, where the demand of the judgment debtor for unliquidated damages is reduced to judgment during the pendency of the creditors' bill.

  The syllabus makes no mention of the reach of a creditor's bill in regard to an unliquidated personal injury claim.

7. "It is contended, that the demand of Mrs. Teetor against the city was for damages unliquidated, growing out of a tort, and was not, therefore, until reduced to judgment, such an interest as might, under the statute, be subjected by the judgment creditor to the payment of his judgment. * * * Mrs. Teetor's demand for damages on account of injury to her land, did not, it is true, rest on a money contract, but it was nevertheless a chose in action. While by a chose in action is ordinarily understood a right of action for money arising under contract, the term is undoubtedly of much broader significance,

view, not appropriately interpreted. While the phrase "tort" is employed generally in the quoted passage, it relates, within the context of *Hafer*, only to torts against property. It is true that the quoted language from *Hafer* goes on to note that "chose in action" is a broad concept that embraces the right to recover monetary damages for wrongs inflicted either upon one's property or person. However, the modifying adjective "unliquidated" once again, within the context of *Hafer*, had reference only to torts against property. As we have indicated above, *Hafer* ultimately suggested that a judgment creditor's right to proceed against a chose in action for personal injury is to be recognized only when that claim has been vested or liquidated or has "become due." See *Hafer, supra*, 49 O.St. at 67–68, 30 N.E. 197.

The view which we adopt herein, and which we believe is directly traceable back to *Hafer*, is also consonant with subsequent Ohio cases which have held that a judgment creditor may not proceed directly against a tortfeasor who has subjected his judgment debtor to bodily injury, until the debtor's cause of action against such tortfeasor has developed into a *vested* right, due and owing as a result of judgment or settlement. See Alms & Doepke Co. v. Johnson, *supra*. See also Hartford Accident & Indemnity Co. v. Randall, 125 O.St. 581, 585, 183 N.E. 433 (1932); Fire Ass'n of Philadelphia v. State Automobile Mutual Ins. Co., 29 O.Law Abs. 135 (Ct.App. Summit Cty.1938); also see n.3, *supra*.

In fact, with the exception of In re Borchers, *supra*, no other Ohio court has adopted the extension of *Hafer* allowed by the Court in *Strouss-Hirshberg*. See, Haines v. Public Finance Corp., *supra;* Alms & Doepke Co. v. Johnson, *supra*. The Supreme Court of Ohio was recently presented with the opportunity to do so, by way of *dicta* (as it had done in *Hafer*), but declined to adopt the *Strouss-Hirshberg* extension. See Aetna Casualty & Surety Co. v. Hensgen, 22 Ohio St. 2d 83, 258 N.E.2d 237, 51 Ohio O.2d 106 (1970). In fact, in that case the Supreme Court recited the limited and classic holding of *Hafer* by noting merely that "a cause of action to recover for fire damage to property is assignable," 258 N.E.2d at 242, 51 Ohio O.2d at 110.[8]

## II

We conclude in light of the foregoing analysis that the Ohio courts are, at best, divided on the present question.[9] Therefore, we are free to apply, pursuant to the proviso to Section 70(a)(5) of the Bankruptcy Act, the line of authority that best comports with the underlying policies of the Act and that most appeals to the conscience of this Court.

We note at the outset that:

"It is not, and never has been, the policy of the law to coin into money for the profit of his creditors the bodily pain, mental anguish or outraged feelings of a bankrupt. None of the federal or English bankruptcy acts,

---

and includes the right to recover pecuniary damages for a wrong inflicted either upon the person or property. It embraces demands arising out of a tort, as well as causes of action originating in the breach of a contract."
*Id.*, 19 O.L.A. at 227, citing 49 O.St. at 69, 30 N.E. 197; also see n. 4, *supra*.

8. When the holding of *Hafer* is so restricted, it presents no problem under the Bankruptcy Act. Section 70(a)(6) of the Bankruptcy Act, 11 U.S.C. § 110(a)(6), specifically recognizes the trustee's right to causes of action "arising upon contracts, or usury, or the unlawful taking

or detention of or injury to his property . . . ." See Willyerd v. Buildex Company, 463 F.2d 996 (C.A. 6, 1972).

9. Other states and federal circuits have also divided on this question. Under California law an unliquidated claim for personal injuries passes to the trustee. See Carmona v. Robinson, 336 F.2d 518 (C.A. 9, 1964) relying upon In re Farris, 217 F.Supp. 598 (N.D.Cal.1963) and Section 688.1 of the California Code of Civil Procedure; also see In re Calestini, 321 F.Supp. 1313 (N.D.Cal.1971). The law in Wisconsin is to the contrary. See In re Buda, 323 F.2d 748 (C.A. 7 1963).

nor our own insolvency statutes, have gone to that length."

Sibley v. Nason, 196 Mass. 125, 81 N.E. 887 (1907); also see Rice v. Stone, 83 Mass. 566 (1861); Bethlehem Fabricators v. H. D. Watts Co., 286 Mass. 566, 190 N.E. 828, 93 A.L.R. 1124 (1934); In re Funk, 2 F.Supp. 555 (W.D.Va. 1932), aff'd sub nom. Ruebush v. Funk, 63 F.2d 170 (C.A.4, 1933); Harleysville Mutual Insurance Co. v. Lea, 2 Ariz. App. 538, 410 P.2d 495 (1966); and cases cited in Annot. 40 A.L.R.2d 500, §§ 3, 6(b) (1955).

The fundamental policies of the federal Bankruptcy Act are, instead, to the contrary. While the Act, like many central pieces of legislation, attempts to strike a balance between the disparate interests involved—in the case of bankruptcy between debtors and creditors—it must be remembered that the Act ultimately favors the debtor who invokes its protection. The Act's basic purpose is to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); Perez v. Campbell, 402 U.S. 637, 642, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); Aveni v. Richman, 458 F.2d 972 (C.A.6, 1972). The philosophy of our system, well reflected in the very concept of bankruptcy, is that people are entitled to a second chance, on as equal a footing as the law can allow.

In pursuit of this goal the bankrupt, under our approach, is allowed legal dispensation and discharge as to those debts which are "sufficiently rooted in [his] pre-bankruptcy past" and which would, if not discharged, interfere with his "ability to make an unencumbered fresh start". Segal v. Rochelle, 382 U.S. 375, 379–380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966); Lines v. Frederick, supra; Aveni v. Richman, supra. The Supreme Court has recently remind-

ed us again that the "various provisions of the Bankruptcy Act were adopted in the light of [these] view[s] and are to be construed when reasonably possible in harmony with [them] so as to effectuate the general purpose and policy of the act." Lines v. Frederick, supra, 400 U. S. at 19, 91 S.Ct. at 114; Local Loan Co. v. Hunt, supra, 292 U.S. at 244–245, 54 S.Ct. 695.

These policies constitute the logical underpinnings of a series of decisions that have held that not everything owned by the bankrupt at the time he files his petition is to be considered "property" within the meaning of the Bankruptcy Act. See Local Loan Co. v. Hunt, supra; Segal v. Rochelle, supra. Certain kinds of property such as future wages subject to state pre-garnishment statutes, see Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969) and accrued but unspent vacation pay, see Lines v. Frederick, supra, represent "specialized" types of property which do not pass to the trustee under Section 70 of the Act. See, Comment, The Growth of Procedural Due Process into a New Substance: An Expanding Protection for Personal Liberty and a "Specialized Type of Property" . . . in our Economic System, 66 N.W.U.L.Rev. 502, 525–532 (1971); Sniadach v. Family Finance Corp., supra, 395 U.S. at 340, 89 S.Ct. 1820; Lines v. Frederick, supra, 400 U. S. at 19, 91 S.Ct. 113. The Supreme Court has recently held, in what is a logical corollary to the notion of specialized property, that at times a trustee has too tenuous a relationship to a given claim to have standing to assert that claim on behalf of the bankrupt estate. See Caplin v. Marine Midland Grace Co. of New York, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) (holding that a trustee, in a proceeding under Chapter X of the Bankruptcy Act, did not have standing to assert, on behalf of the holders of debentures issued by the bankrupt in reorganization, various negligence claims against an indenture trustee).

In view of these evolving federal policies of the Bankruptcy Act, it is our opinion that an unliquidated claim for personal injuries more nearly resembles the "specialized" types of property before the Court in *Segal, Sniadach* and *Lines* than regular wages, earned prior to bankruptcy, which vest in the referee pursuant to Section 70(a)(5) of the Act. See Aveni v. Richman, *supra.* Nor do we believe that it would be appropriate to allow the trustee, a stranger to and remote from the physical injuries sustained by a bankrupt, to assert a claim based upon these injuries. In our opinion Caplin v. Marine Midland Grace Co., *supra,* is applicable, by analogy, to the situation at bar.

The award of monetary damages to one who has suffered personal injuries due to the fault of another is premised on the theory that money can adequately compensate for pain and suffering; that money can make a shattered or scarred body whole. This theory, like most, is imperfect and cannot apply to all conceivable situations. However, our law of torts, at present and from the early days of the common law, has operated from this imperfect premise. It seems apparent to this Court that an uncompensated claim for personal injury may seriously complicate the injured's ability to function in the future.

In the context of bankruptcy it cannot be said that the bankrupt is being given a discharge from his preexisting debt and a "fresh start" if his creditors can still look to his unliquidated claim for personal injury for satisfaction. According to the existing theory of tort law, the holder of a claim for injury to his person is not "whole" until that claim has been reduced to a money judgment.[9A] To the extent the creditors of a bankrupt can reach his unliquidated claim for personal injury, that bankrupt is denied his ultimate right under the Act which is the right to make an "unencumbered fresh start" after being freed from all debts rooted in his prebankruptcy past. The pendency in an exempt property status of such a claim is at least as important to the social ends underlying the Bankruptcy Act as the exempt status which is given accrued but unspent vacation pay. See Lines v. Frederick, *supra*; Segal v. Rochelle, *supra.*

Nor does this Court believe that it would be appropriate to allow the trustee standing to assert the personal injury claim of the bankrupt on behalf of the bankrupt's estate. It must be remembered that the trustee is vested with the legal title to property which passes to him, by operation of law, under the terms of Section 70(a). If we permitted the trustee at bar the legal title to the bankrupt's claim he could conceivably prosecute it, even, perhaps, against the wishes of the bankrupt.

Although this result was reached legally in *In re Borchers* by the application of principles of a creditor's bill, conceptually the result is not distinguishable from the universally condemned practice of the assignment of personal injury claims. In a creditor's bill situation brought under the provisions of Section 2333.01 O.R.C., see n.2, *supra*, the judgment creditor merely obtains an equitable lien on the liquidated recovery, if any, that is ultimately made by the injured judgment-debtor. The injured judgment-debtor retains full control over his cause of action; if he decides not to prosecute his claim, his creditor obtains nothing. The situation permitted by the Referee herein allows the trustee unbridled control of the injured bankrupt's cause of action. As

---

**9A.** The Internal Revenue Code of 1954 specifically excludes from the legal conception of "income" amounts received, through a claim, suit or agreement, as damages for personal injuries. See I.R.C. § 104(a)(2); Starrels v. Commissioner of Internal Revenue, 304 F.2d 574 (C.A.

9 1962); McWeeney v. New York, N. H. & H. Railroad Co., 282 F.2d 34 (C.A. 2, 1960), cert. den. 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960); Anderson v. United Airlines, Inc., 183 F.Supp. 97 (S. D.Cal.1960).

such it constitutes an assignment of the bankrupt's claim for the benefit of his creditors. As we noted above at the outset of our discussion, Anglo-American law does not generally permit an injured bankrupt's body to be used in this fashion for the benefit of his creditors. See cases cited at 435, *supra;* also see Rochin v. California, 342 U.S. 165, 72 S. Ct. 205, 96 L.Ed. 183 (1952) (per Frankfurter, J.).

In our view to allow such a claim, either by way of creditor's bill or petition in bankruptcy, to pass freely to one not directly involved in the pain and suffering usually attendant upon such accidents would be to unfeelingly minimize the extent to which the injured person is reduced, physically, psychologically, and as to future earning capacity, by such accidents. This Court, if it allowed such claims to pass freely in these ways, could be encouraging a market in the pain and suffering of unfortunate persons and the law neither does, nor should it, encourage so callous and barbaric a practice. See Rabe v. Hanna, 5 Ohio 530, 532 (1832); Rice v. Stone, *supra.*[10]

We are particularly mindful that a serious accident, which reduces a person's physical abilities and earning capacity, may be the prime catalyst to his filing a petition for bankruptcy. If this claim could be promptly litigated and recovery made, the injured individual would, per-haps, not have to file for bankruptcy at all. Usually, however, crowded court dockets and sound defense tactics do not allow for the expeditious settlement of these claims. We note that bankrupt herein was involved in the accident in December of 1968. When he filed his petition in bankruptcy in June of 1971, his personal injury claim was still pending in State court. To the best of our knowledge, it is pending to this date—to September of 1972.

To allow this fortuitous delay to the disposition of a bankrupt's claim for personal injuries—a delay which is beyond the control of the bankrupt—to redound to the benefit of his creditors and to his detriment, especially where the bankrupt's economic plight may be directly related to an incapacity flowing from an injury which is the subject of the pending personal injury suit, would be both illogical and unconscionable. In the absence of clear and binding authority upon us, either by way of Supreme Court of Ohio decisional law or legislative edict, see Carmona v. Robinson, *supra,* we refuse to reach so inequitable a result.

Consequently, we hold that to allow the potential of such a recovery to pass by way of a creditor's bill to the trustee before it has become liquidated is to deny the bankrupt his right, under the federal bankruptcy law, to an "unencumbered fresh start" which is "unham-

---

10. The courts of other jurisdictions have overwhelmingly rejected the adoption of this practice. As the Supreme Court of Arkansas noted in Southern Farm Bureau Casualty Ins. Co. v. Wright Oil Company, 248 Ark. 803, 454 S.W.2d 69 (1970), paraphrasing Rice v. Stone, supra:

> If causes of action for personal injuries could be assigned, then speculators could buy up such claims, perhaps at necessitous discounts, and conduct a profitable traffic in human pain and suffering.

*Id.,* 454 S.W.2d at 70, and cases cited therein. We are in agreement with this view.

This Court is also in agreement with the sentiment expressed by the Supreme Court of Illinois in the celebrated case of North Chicago St. Ry. Co. v. Ackley, 171 Ill. 100, 49 N.E. 222 (1897) where that Court held:

> On grounds of public policy, the sale or assignments of actions for injuries to the person are void. The law will not consider the injuries of a citizen whereby he is injured in his person to be, as a cause of action, a commodity of sale.

Also see Harleysville Mut. Ins. Co. v. Lea, 2 Ariz.App. 538, 410 P.2d 495 (1966); Sibley v. Nason, *supra;* In re Buda, *supra;* Saper v. Delgado, 146 F.2d 714 (C.A. 2, 1945) (under New York law); Young v. Roodner, 123 Conn. 68, 192 A. 710 (1937); Annot. 60 A.L.R.2d 1217, §§ 3, 4 (1959). For *contra* authority see other cases cited at n. 8, *supra.*

pered by the pressure and discouragement of pre-existing debt." Lines v. Frederick, *supra*, 400 U.S. at 19–20, 91 S.Ct. at 113–114.

Contrary to the argument advanced by the trustee herein, we do not think our holding will encourage the fraudulent filing for discharge in bankruptcy after a personal injury claim arises, but before it is liquidated. This argument assumes the existence of two independent conditions: first, a potentially meritorious but unliquidated tort claim for personal injuries; and second, a financial situation which would allow one to invoke the protection of the Bankruptcy Act. It is highly unlikely that our decision today will alter the primary behavior of people and cause them to attempt to place themselves into either of these two conditions. But, if the second condition exists, the bankrupt is entitled to a discharge, regardless of the presence of the first condition. This Court cannot comprehend why the situation of the bankrupt's creditors should be improved merely because he was unfortunate enough to sustain a personal injury.

█ In any event, we will assume, *arguendo*, that our decision *will* be an incentive to those holding unliquidated claims for personal injuries and who are in shaky enough economic straits to qualify for discharge in bankruptcy. In this situation the question is who shall benefit from the potential windfall, if a claim for personal injuries can be so characterized. When the question is posed in these terms, it should be clear that we have done no more today than to recognize that the Act, which contains a presumption in favor of the bankrupt, was enacted for the protection of debt-

ors, and that its underlying policies favor the bankrupt. These considerations, noted in *Local Loan, supra,* and its progeny, compel the courts to give the bankrupt the benefit of the doubt and to resolve close questions in his favor.[11]

Because we decide the question before us as a matter of law the general proposition that the findings of fact of the Referee are to be upheld, unless clearly erroneous, has no applicability to the case at bar. See United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1947); McDowell v. John Deere Industrial Equipment Co., *supra*; In the Matter of Columbus Malleable, Inc., 459 F.2d 118 (C.A.6, 1972).

While we recognize that the law of Ohio on this question is sufficiently cloudy to allow either possible answer to the question before us, the Supreme Court decision in Lines v. Frederick mandates a conclusion contrary to that reached in *In re Borchers, supra.*

Had this Court been faced with the problem at the time of *Borchers,* it is altogether probable that we might have reached the same result. Therefore, to the extent the Referee in the case at bar relied on *In re Borchers* in denying bankrupt's application that his unliquidated cause of action be deemed exempt property under Section 70(a)(5), his decision will be reversed.

### III

One further question is still before this Court. As we have noted above, the Ohio survival statute was amended in the year *Strouss-Hirshberg* was decided and broadened to include tort to person. See n.6, *supra.* Some early Ohio cases

---

11. Nor do we think that the trustee's argument sounds in actual fraud. As a general rule, people are free, provided they do not break the law, to organize their affairs in a manner which maximizes the benefits to which they are entitled. See Commissioner of Internal Revenue v. Newman, 159 F.2d 848, 850 (C.A. 2 1947) (Learned Hand, J., dissenting); Chisholm v. Commissioner of Internal Revenue, 79 F.2d 14, 15 (C.A. 2, 1935).

In any event we note that the Referee, under Section 32 of the Act, 11 U.S.C. § 55, has an affirmative duty, except for a narrow category of sharply limited exceptions, to grant a discharge to the bankrupt. Simple fraud is not one of the enumerated reasons for denying to the bankrupt this basic right under the Act. See McDowell v. John Deere Industrial Equipment Co., 461 F.2d 48 (C.A. 6, 1972).

including Grant v. Ludlow's Adm'r, *supra,* and Village of Cardington v. Adm'r of Fredericks, *supra,* indicated that survivability was the test for assignability. It has been strongly suggested in these cases that the two are to be equated and can be regarded as "convertible concepts." See Village of Cardington, *supra,* 46 Ohio St. at 448, 21 N.E. 766; also see, Goings v. Black, 164 N.E.2d 925, 82 O.Law Abs. 289, 290 (Ohio Common Pleas Court, Franklin County, 1960) *(dicta),* aff'd, 182 N.E.2d 640, 88 O.Law Abs. 286 (Ohio Ct.App. Franklin Cty.1961). The lower court in *Goings,* however, did recognize that the point of identity between survivability and assignability could at times be ignored on public policy grounds. *Id.,* 164 N.E.2d 925, 82 O.Law Abs. at 290.

If this Court were to consider the dicta expressed in Grant v. Ludlow's Adm'r, *supra,* and *Village of Cardington, supra,* (which of course arose before the amendation of the Ohio survival statute, and which equated survivability and assignability) to be controlling, we would then have a situation where tort claims involving personal injuries could be bought and sold as other commodities; yet the Ohio authorities and this Court, *supra,* 8 Ohio St. at 13–14, have uniformly rejected this view. See, 5 O. Jur.2d, Assignment, Section 13 at 167, 168; In re Borchers, *supra,* 17 Ohio Misc. 146, 46 Ohio O.2d at 322.

■ In the absence of authority directly binding upon us, emanating either from the Supreme Court of Ohio or the General Assembly, the Court will adopt the view that it considers to be more in accord with enlightened public policy. We hold, therefore, that the mere existence of a survival statute which extends to administrators and its survivors the right to bring a wrongful death action for tort done to the person of the decedent, does not create by implication the right of free assignability of personal injury claims in tort.

■ We note that the view adopted herein is in accord with the trend of modern authority and with the excellent opinion of the Supreme Court of Arkansas in Southern Farm Bureau Casualty Insurance Co. v. Wright Oil Co., *supra,* where the Court held that:

"We have no hesitancy in joining those courts which hold that a survival statute does not confer the power of assignment upon the holder of an unliquidated tort claim for personal injuries. It follows, of course, that we also reject the appellee's secondary argument that the proceeds of such a claim should be assignable before judgment, even though the cause of action itself is not. The only value of a cause of action is its possible conversion into a collectible money judgment; so there is no sound basis for distinguishing between the cause of action and its proceeds as far as assignability is concerned."

The reasoning of that court commends itself to us and we therefore adopt its holding in full as far as applicable to the case at bar. See, *accord,* Forsthove v. Hardware Dealers Mut. Fire Ins. Co., Mo.App., 416 S.W.2d 208 (1967); Harleysville Mut. Insurance Co. v. Lea, *supra.*

Of course nothing stated herein shall be interpreted as affecting the subrogation, in accordance with law, of insurance claims, see Aetna Casualty & Surety Co. v. Hensgen, *supra.* Neither shall our opinion be read as suggesting the unconstitutionality of Ohio's creditor's bill statute, see n.2, *supra,* as interpreted in *In re Borchers, supra,* on Supremacy Clause grounds because it ". . . directly conflicts with . . . the overriding purpose of the Bankruptcy Act—that the bankrupt shall have 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" Harris v. Manufacturers National Bank of Detroit, 457 F.2d 631 (C.A.6, 1972), quoting Perez v. Campbell, *supra,* 402 U.S. at 648, 91 S.Ct. 1704; and Local Loan Co. v. Hunt, *supra,* 292 U.S. at 248, 54 S.Ct. 695.

Accordingly, for the reasons set forth above, the Referee's Order denying the bankrupt's application that his unliquidated cause of action for personal injury be deemed exempt property within the meaning of Section 70(a)(5) of the Bankruptcy Act, is hereby reversed. This action is remanded to the Referee with instructions that he grant the aforementioned application of the bankrupt and for further proceedings in conformity with the views expressed herein.

It is so ordered.